**UNITED STATES of America,**
**Plaintiff–Appellant,**

**v.**

**Richard J. LEARY, and F.L. Kleinberg & Co., Defendants–Appellees.**

Nos. 86–2487, 86–2488.

United States Court of Appeals, Tenth Circuit.

May 2, 1988.

Bruce F. Black, Asst. U.S. Atty. (Robert N. Miller, U.S. Atty., with him on the briefs), Denver, Colo., for plaintiff-appellant.

Michael F. DiManna, Di Manna & Jackson, Denver, Colo., for defendant-appellee, Leary.

Robert T. McAllister, Dill, Dill & McAllister, Denver, Colo., for defendant-appellee, Kleinberg.

Before HOLLOWAY, Chief Judge, ANDERSON and TIMBERS,* Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

The government appeals from the district court's decision granting defendants' motion to suppress evidence seized under a search warrant. We affirm the district court, holding that the defendants' fourth amendment rights were infringed, that the search warrant was facially overbroad and invalid, and that the evidence seized should be suppressed.

## I. Background

This appeal stems from the execution of a search warrant at the offices of the F.L. Kleinberg Company ("Kleinberg") in Boulder, Colorado on August 23, 1984. Kleinberg and Richard J. Leary, a vice-president at Kleinberg, were subsequently indicted for conspiring to violate the Export Administration Act. 50 U.S.C.App. § 2410. Kleinberg and Leary, as defendants, moved to suppress the fruits of the search of the Kleinberg offices. The district court granted that motion and the government appeals pursuant to 18 U.S.C. § 3731.

The search warrant was obtained by federal customs agent John Juhasz on the basis of his affidavit alleging violations of the Arms Export Control Act, 22 U.S.C. § 2778, and the Export Administration Act. The affidavit recites in detail the purchase and attempted export of a Micro-tel Precision Attenuation Measurement Receiver [1] by Kleinberg in 1984. In short, the affidavit alleges that Kleinberg did not have the proper license to export this particular piece of equipment and that Kleinberg was attempting to illegally export the receiver to the People's Republic of China via a series of "front" companies in Hong Kong. The affidavit addresses only this single transaction and the companies [2] involved in that transaction. No other companies, countries, or commodities are mentioned in the affidavit or alleged to be part of any illegal export scheme.

Based on the affidavit, a warrant was issued to search the Kleinberg offices and seize the following property:

Correspondence, Telex messages, contracts, invoices, purchase orders, shipping documents, payment records, export documents, packing slips, technical data, recorded notations, and other records and communications relating to the purchase, sale and illegal exportation of materials in violation of the Arms Export Control Act, 22 U.S.C. 2778, and the Export Administration Act of 1979, 50 U.S.C.App. 2410.

The warrant was executed on August 23, 1984 by Agent Juhasz and six other Customs officers. Twenty boxes of business records were seized including references to sales and sales contacts throughout the world, telexes to Australia and South Africa, information from applicants for employment with Kleinberg, Leary's application with Shearson American Express for per-

---

* Hon. William H. Timbers, United States Court of Appeals for the Second Circuit, sitting by designation.

1. The Micro-tel receiver is a "device used to measure or test the basic output of electronic parts." Brief of Appellees at 2 (citing R. Vol. III at 202).

2. The affidavit specifically mentions six companies involved in the Micro-tel transaction: Kleinberg; Micro-tel Corporation, a Maryland manufacturer; Union Air Transport, Kleinberg's shipping agent in California; Hong Kong Computer Company, the purchaser in Hong Kong; Dataventures International, Ltd., another Hong Kong company which was supposed to purchase the receiver from Hong Kong Computer; and Tak Sing Company of Hong Kong, the final purchaser of the receiver in Hong Kong.

sonal financial planning, Leary's life insurance policy, and correspondence relating to other businesses for which Leary acted as sales representative.

After the indictment, Kleinberg and Leary moved to suppress all of the evidence seized in the search. The district court granted that motion, finding first that the affidavit was not supported by probable cause,[3] and second, that the warrant did not sufficiently specify the evidence to be seized. The court also found that the "good faith" exception to the exclusionary rule adopted by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed. 2d 677 (1984) was inapplicable.

On appeal, the government argues (1) Leary and Kleinberg have no standing to raise a fourth amendment claim; (2) the warrant was sufficiently particular in specifying the items to be seized; (3) the warrant was supported by probable cause; and (4) even if the warrant is found upon review to be invalid, reliance on the warrant was "objectively reasonable" and the evidence should not be suppressed under the reasoning of *Leon*.

## II. Standing

■ In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) the Supreme Court abandoned a separate analysis of "standing" for claims of violations of the fourth amendment in favor of an analysis focusing on the "substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." *Id.* at 133, 99 S.Ct. at 425.[4] *See Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *United States v. Hansen*, 652 F.2d 1374,

1379 n. 2 (10th Cir.1981). "Whether a person has standing to contest a search on fourth amendment grounds turns on whether the person had a legitimate expectation of privacy in the area searched, not merely in the items seized." *United States v. Skowronski*, 827 F.2d 1414, 1418 (10th Cir.1987) (citing *United States v. Salvucci*, 448 U.S. 83, 93, 100 S.Ct. 2547, 2554, 65 L.Ed.2d 619 (1980)). Determining whether a legitimate or justifiable expectation of privacy exists, in turn, involves two inquiries. First, the claimant must show a subjective expectation of privacy in the area searched, and second, that expectation must be one that "society is prepared to recognize as 'reasonable.'" *Hudson v. Palmer*, 468 U.S. 517, 525, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984) (quoting in part *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)); *see also United States v. Owens*, 782 F.2d 146, 150 (10th Cir.1986). The "ultimate question" is "whether one's claim to privacy from government intrusion is reasonable in light of all the surrounding circumstances." *Rakas*, 439 U.S. at 152, 99 S.Ct. at 435 (Powell, J., concurring). Finally, standing is a legal question, and "[w]here the facts are not in dispute, this court may review the question of standing de novo." *United States v. Kuespert*, 773 F.2d 1066, 1067 (9th Cir.1985).

There is no doubt that a corporate officer or employee may assert a reasonable or legitimate expectation of privacy in his corporate office. *Cf. Mancusi v. DeForte*, 392 U.S. 364, 369, 88 S.Ct. 2120, 2124, 20 L.Ed. 2d 1154 (1968) ("It has long been settled that one has standing to object to a search of his office, as well as of his home."); *United States v. Lefkowitz*, 464 F.Supp. 227, 230 (C.D.Cal.1979) (corporate officers

---

**3.** According to the district court:

The evidence shows that the magistrate was led to believe a crime had been committed by the defendants when Agent Juhasz could not himself have believed that the facts he set forth in his affidavit constituted a crime. The affidavit on its face fails to establish probable cause that any crime had been committed if the relevant statutes and facts are examined. Mem.Opinion at 5–6.

**4.** Nevertheless, fourth amendment claims are still commonly analyzed in terms of "standing." *See* 3 C. Wright, *Federal Practice and Procedure* § 674 (2d ed. 1982); *see, e.g., United States v. Salvucci*, 448 U.S. 83, 87 n. 4, 100 S.Ct. 2547, 2551 n. 4, 65 L.Ed.2d 619 (1980); *United States v. Skowronski*, 827 F.2d 1414, 1417–18 (10th Cir.1987); *United States v. Salazar*, 805 F.2d 1394, 1396 (9th Cir.1986); *United States v. Gerena*, 662 F.Supp. 1218, 1232–40 (D.Conn.1987).

had sufficient privacy interest in corporate office suite), *aff'd*, 618 F.2d 1313 (9th Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980); *see also* 4 W. LaFave, *Search and Seizure* § 11.3(d) (2d ed. 1987) [hereinafter LaFave]. Similarly, "it seems clear that a corporate defendant has standing with respect to searches of corporate premises and seizure of corporate records...." *Id.* at 316. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 353, 97 S.Ct. 619, 629, 50 L.Ed.2d 530 (1977); *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597 (5th Cir.1988). In addition, except in rare circumstances, a warrant is as necessary to support a search of commercial premises as private premises. *See Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1216 n. 5 (D.C.Cir.1981) (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978)), *cert. denied*, 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982).

Normally, our inquiry would end here. The government argues, however, that Leary and Kleinberg lack the requisite expectation of privacy in their offices and records because of the regulatory scheme imposed upon exporters by the federal government and the company's "open door" policy toward government inspectors. For purposes of clarity, we repeat the government's argument in some detail:

[T]he government would concede that if it were not for the regulatory scheme requiring that the defendants make, keep and produce the seized records to the government upon request, and the company's open door policy, both defendants would be able to assert a privacy interest in the seized records under *Rakas v. Illinois*, 439 U.S. 128 [99 S.Ct. 421, 58 L.Ed.2d 387] (1978).

The standing argument asserted by the government is limited to the very unusual facts of this case.... [T]he de-

fendants operated in a highly regulated industry where the law required them to make, keep and produce all documents relating in any way to an export. Furthermore, company policy was that the government could come, scheduled or unscheduled and ask for any file or information it needed. Thus, the government's argument is that any privacy interest in the required records was waived by the company and Mr. Leary.

Mr. Leary must have known that under these circumstances any company record could be turned over to the government upon request at any time, whether he was present or not, without the government being required to resort to legal process.

The company's position is somewhat different, because it could have revoked the policy at any time. But it did not. At the conclusion of the search the President, Frederick L. Kleinberg, invited the agents back to examine any remaining records at a later time.

Reply Brief of Appellant at 3–5 (citations omitted).

We find the government's argument inherently misleading, as it attempts to concede an expectation of privacy with one hand and remove it with the other. Moreover, the argument confuses the law relating to searches or inspections of "regulated" industries with simple recordkeeping requirements.[5] Nevertheless, we will analyze the government's position in detail. The government's standing argument consists of two related questions: First, do the regulatory requirements imposed on exporters licensed by the government and Kleinberg's "open door" policy constitute "circumstances" that render Leary and Kleinberg's expectation of privacy unreasonable? *See Rakas*, 439 U.S. at 152, 99 S.Ct. at 435 (Powell, J., concurring). Second, have Leary and Kleinberg "waived"

---

5. The government suggests that the defendants' fourth amendment rights are somehow limited by the reasoning of *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1970) and *Peterman v. Coleman*, 764 F.2d 1416 (11th Cir. 1985). A careful review of those cases demonstrates that they are inapplicable here. Both

decisions conclude that the government may impose recordkeeping and inspection requirements on certain businesses without violating the fourth amendment. The validity of the recordkeeping and inspection requirements imposed upon licensed exporters are not at issue.

their fourth amendment rights by participating in a regulated business and by adopting an "open door" policy, inviting government agents to inspect their business records? We address these questions in turn.

Federal regulations implementing the nation's export control laws impose comprehensive recordkeeping requirements on exporters. It is clear, however, that licensed exporters retain their fourth amendment rights. The key provision is 15 C.F.R. § 387.13(f)(1) (1987):

> Persons within the United States may be requested to produce records which are required to be kept by any provision of the Export Administration Regulations or by any order, and to make them available for inspection and copying by any authorized agent, official or employee of the International Trade Administration, the U.S. Customs Service, or the U.S. Government, without any charge or expense to such agent, official or employee. The [government] encourage[s] voluntary cooperation with such requests. When voluntary cooperation is not forthcoming, the Office of Export Enforcement and the Office of Antiboycott Compliance are authorized to issue subpoenas for books, records and other writings. In instances where a person does not comply with a subpoena, the Department of Commerce may petition a district court to have the subpoena enforced.

The district court properly analyzed the effect of these requirements:

> The Department of Commerce could have requested inspection and copying of records relating to export at any time, and if the company refused to allow voluntary inspection, the government could have subpoenaed the records. This required procedure affords the protection

of judicial review before records can be seized without permission.... The fact that a warrant is required for a full-scale criminal search and seizure of records required to be kept recognizes the fourth amendment's protection of privacy even in these circumstances and restrictions on the government's power to intrude on that privacy.

Mem. Opinion at 4. *Cf. United States v. Molt,* 444 F.Supp. 491 (E.D.Pa.), *aff'd,* 589 F.2d 1247 (3d Cir.1978); *see also Railway Labor Executives' Ass'n v. Burnley,* 839 F.2d 575, 584 (9th Cir.1988) ("When no ... plan [authorizing warrantless inspections] is built into the legislation regulating a specific industry, the [Supreme] Court has required a warrant as a condition of a reasonable search."); *Serpas v. Schmidt,* 827 F.2d 23, 28 (7th Cir.1987) ("[A] history of pervasive regulation of an industry is not by itself enough to render the warrant requirement superfluous.... [T]he Supreme Court has sanctioned warrantless searches of commercial premises in certain industries subject to longstanding governmental oversight.... [however] [i]n each of these cases, ... Congress expressly authorized the terms and conditions of searches on specified premises."), *cert. denied,* —— U.S. ——, 108 S.Ct. 1075, 99 L.Ed.2d 234 (1988). Neither the export regulations nor the export statutes authorize a warrantless search and seizure of business records, *see* 22 U.S.C. § 2778(e); 50 U.S.C.App. § 2411; Brief of Appellant at 14, yet the government would have us hold that the regulatory scheme negates the licensed exporter's right to challenge an invalid warrant. In other words, the government concedes that it must obtain a warrant but argues that it need not obtain a valid warrant. We refuse to adopt this reasoning.[6]

---

**6.** Of course "[a]n expectation of privacy in commercial premises, ... is different from, and indeed less than, a similar expectation in an individual's home. This expectation is particularly attenuated in commercial property employed in 'closely regulated' industries." *New York v. Burger,* —— U.S. ——, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987) (citations omitted). Nevertheless, we reject the government's argument that the nature of the Kleinberg business diminishes the defendants' expectation of priva-

cy. The reduced expectation of privacy in commercial premises is important in two respects, neither of which is relevant to our disposition of this case. First, the reduced expectation of privacy may justify a statutory authorization of warrantless inspections or searches. *See Id.* at 2643-44. The government concedes that a warrant was required to search the Kleinberg offices. Second, the nature of the premises may "affect the type of evidence that constitutes

■ Similarly, the company's "open door" policy does not negate the defendants' expectation of privacy. There is a distinction of constitutional significance between the company's policy, which invited government agents to "visit ... and ask for any file or information they want or need," and a thorough search of the offices and seizure and removal of twenty boxes of files, including personal records and documents unrelated to the company's regulated export activities. Leary and Kleinberg retained control over the premises and records and had the authority to restrict the government's access by the terms of the policy. In sum, we find a reasonable expectation of privacy in these circumstances.

■ For substantially the same reasons, we reject the government's argument that Leary and Kleinberg either waived their fourth amendment rights or consented to the search. When evaluating fourth amendment rights, there is no clear distinction between "consent" to a search and a "waiver" of one's privacy interest. The government, however, attempts to draw a distinction in this case, that is, that Leary and Kleinberg either "consented" to the August 23 search, or evidenced an ongoing consent to be searched at any time (a "waiver").[7] Despite the government's effort to cast this inquiry as one of waiver, the proper analysis focuses on consent. In fact, the Supreme Court has expressly rejected the use of "waiver" analysis in fourth amendment cases in favor of a "voluntary consent" test. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 235–46, 93 S.Ct. 2041, 2052–57, 36 L.Ed.2d 854 (1973). Thus, to determine whether, by granting any ongoing consent, Leary and Kleinberg effectively "waived" their fourth amendment rights, our analysis is guided by the law developed for analyzing "consent" searches.[8]

Initially, we reject any suggestion that Leary and Kleinberg specifically consented to the August 23, 1984 search. When a government agent claims authority to search under a warrant, "he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." *Bumper v. North Carolina,* 391 U.S. 543, 550, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). In fact, the Supreme Court has stated that: "A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid." *Bumper,* 391 U.S. at 549, 88 S.Ct. at 1792.[9]

probable cause to obtain a search warrant in the particular case." *Blackie's House of Beef,* 659 F.2d at 1216 n. 5. We find no need to reach the question of probable cause. *See infra* at 610.

7. For an example of ongoing consent treated as a waiver, see *American Postal Workers Union v. United States Postal Service,* 671 F.Supp. 497, 501–02 (S.D.Ohio 1987) (Where "postal regulations, express terms of locker assignment agreements and collective bargaining agreements provide[d] for nonconsensual inspection of employee lockers by post office personnel," postal employees "expressly waived any Fourth Amendment rights they might otherwise have in their assigned lockers.").

8. We believe that *Schneckloth* demands that we review the government's "waiver" argument as a question of consent. *See Schneckloth,* 412 U.S. at 246, 93 S.Ct. at 2057. We also find the Court's quotation from Justice Black instructive: "'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law.," *Id.* at 235, 93 S.Ct. at 2052 (quoting *Green v. United States,* 355 U.S. 184, 191, 78 S.Ct. 221, 226, 2 L.Ed.2d 199 (1957)).

9. The Court's language in *Bumper* has not been applied literally in all cases. *See Comeaux v. Henderson,* 462 F.2d 1345, 1346 (5th Cir.1972) ("not every consent to a search is automatically vitiated simply because a tainted warrant is immediately or remotely involved"); *United States v. Stine,* 458 F.Supp. 366, 370 (E.D.Pa. 1978) ("In a proper case, a voluntary consent may break the chain of causation between an illegal search warrant and a subsequent search.").

At the same time, it is clear that the reasoning of *Bumper* applies in a commercial context and is relevant here. Professor LaFave has noted "if the businessman admits [a government] inspector only after being told that the inspector has a right to conduct a warrantless inspection, this is not consent but merely an acquiescence to a claim of lawful authority no different than that in *Bumper v. North Carolina.* If the inspector makes such a claim, then ... 'the legality of the search depends not on consent but on the authority of a valid statute.'" 3 LaFave, § 10.2(b), at 637 (quoting in part *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972)). As we have noted, the export statutes

Similarly, we find no evidence that Leary and Kleinberg granted an ongoing consent to searches by Customs officers. We recently addressed the question of consent in detail, recognizing that the Supreme Court requires that "consent to a Fourth Amendment search must be voluntary *in fact* and free of coercion under the totality of the circumstances...." *United States v. Carson,* 793 F.2d 1141, 1150 (10th Cir.) (citing *Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. at 2058–59) (emphasis in original), *cert. denied,* — U.S. —, 107 S.Ct. 315, 93 L.Ed. 2d 289 (1986). In addition, we have noted that consent "is a question of fact to be determined from the totality of all the circumstances [and] [t]he Government has the burden of proving that consent was given freely and voluntarily." *United States v. Recalde,* 761 F.2d 1448, 1453 (10th Cir. 1985) (citations omitted).[10]

There is no evidence that Kleinberg and Leary granted an ongoing consent to the search of their offices or records by participating in a regulated activity. The federal recordkeeping regulations leave exporters with a substantial privacy interest. Government agents may be required to resort to judicial process to obtain desired records. Absent a statutory scheme authorizing warrantless searches, there is no waiver of constitutional rights in the mere fact that Leary and Kleinberg chose to participate in an activity regulated and licensed by the government. *See Marshall v. Barlow's Inc.,* 436 U.S. 307, 312–14, 323–24, 98 S.Ct. 1816, 1820–21, 1826, 56 L.Ed.2d 305 (1978).

Nor do we find any ongoing consent in the company's "open door" policy. As we noted earlier, Kleinberg did not invite the government to rummage through company files and carry out any documents that the agents found interesting. Equally important is the fact that "[w]hen the basis for a search or seizure is consent, the government must conform to the limitations placed upon the right granted to search, seize or retain the papers or effects." *Mason v. Pulliam,* 557 F.2d 426, 429 (5th Cir.1977); *see also United States v. Gay,* 774 F.2d 368, 377 (10th Cir.1985) ("The scope of a consent search is limited by the breadth of the actual consent itself."); *United States v. Milian–Rodriguez,* 759 F.2d 1558, 1563 (11th Cir.) ("the government may not use consent to a search which was initially described as narrow as license to conduct a general search"), *cert. denied,* 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 112 (1985). Even if Kleinberg's policy can be characterized as an ongoing consent to government searches, the government exceeded the scope of that consent in two respects. First, Kleinberg invited government agents to inspect and copy records, not seize them. Second, Kleinberg's invitation extended only to those documents related to regulated export activities. The government searched and seized records dealing with Leary's personal and financial affairs and business activities unrelated to exports.

In addition, we find a compelling policy reason to reject the government's argument. As the regulations indicate, the government encourages voluntary cooperation with requests for export documents and information. Yet the government urges us to find that Kleinberg's voluntary cooperation has resulted in a waiver of fourth amendment rights.[11] This interpre-

---

and regulations do not authorize warrantless inspections.

**10.** In reviewing the district court's decision on the question of consent, we rely on the lower court's factual findings unless they are clearly erroneous. *See United States v. Lopez,* 777 F.2d 543, 548 (10th Cir.1985); *Recalde,* 761 F.2d at 1453. However, the question of consent or waiver was not raised in the same fashion below; while the district court found that the defendants had standing to assert their fourth amendment claims, there was no explicit finding on the question of consent. Accordingly, we review the record to answer this question. Because the facts are essentially undisputed, there is no reason to remand for factual determinations. *See Id.* at 1453 n. 4; *cf. United States v. Skowronski,* 827 F.2d 1414, 1417 n. 2 (10th Cir. 1987); *United States v. Hansen,* 652 F.2d 1374, 1383 (10th Cir.1981).

**11.** Furthermore, the government asks that we adopt this reasoning in a case where the government *did not rely* on the policy of voluntary cooperation but entered the premises with a search warrant. *See Bumper v. North Carolina,*

tation of the law would deliver a serious blow to the government's "voluntary cooperation" efforts and discourage "open door" policies in the export industry.

Accordingly, we find no consent or "waiver" and conclude that both Leary and Kleinberg have had their fourth amendment rights infringed by this search and seizure and may seek suppression of the evidence. We proceed to review the adequacy of the search warrant.

### III. Particularity

The fourth amendment requires that warrants "particularly describ[e] ... the persons or things to be seized." U.S. Const. amend. IV. This requirement prevents a "general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) and " 'makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is be taken, nothing is left to the discretion of the officer executing the warrant.' " *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965) (quoting *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927)). *See Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976); *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir.1988); *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir.1985). "The particularity requirement [also] ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss*, 774 F.2d at 404.

The test applied to the description of the items to be seized is a practical one. " 'A description is sufficiently particular when it enables the searcher to reasonably ascer-

tain and identify the things authorized to be seized.' " *United States v. Wolfenbarger*, 696 F.2d 750, 752 (10th Cir.1982) (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir.1982)).[12] Even a warrant that describes the items to be seized in broad or generic terms may be valid "when the description is as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Santarelli*, 778 F.2d 609, 614 (11th Cir. 1985); *see United States v. Strand*, 761 F.2d 449, 453 (8th Cir.1985) ("degree of specificity required necessarily depends upon the circumstances of each particular case"). However, the fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow, and "warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized." *United States v. Fuccillo*, 808 F.2d 173, 176 (1st Cir.), *cert. denied*, — U.S. ——, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987).

The district court found the Kleinberg warrant overbroad. That legal conclusion is subject to *de novo* review on appeal. *See United States v. Fannin*, 817 F.2d 1379, 1381 (9th Cir.1987); *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986). Therefore, our task is to determine if the language of the Kleinberg warrant is sufficiently particular to achieve the requirements of the fourth amendment.

The warrant under scrutiny here included only two limitations. First, the documents to be seized had to fall within a long list of business records typical of the documents kept by an export company. Second, those documents had to relate to

391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

**12.** Thus, the direction in *Stanford* that "nothing is left to the discretion of the officer" has been interpreted in a variety of "practical" ways. *See, e.g., United States v. Strand*, 761 F.2d 449, 453 (8th Cir.1985) ("The constitutional standard for particularity of description in a search warrant is that the language be sufficiently definite

to enable the searcher reasonably to ascertain and identify the things authorized to be seized."); *see also* 2 LaFave, § 4.6(a); 3 C. Wright, *Federal Practice and Procedure* § 670, at 720–22 (2d ed. 1982). The common theme of all descriptions of the particularity standard is that the warrant must allow the executing officer to distinguish between items that may and may not be seized.

"the purchase, sale and illegal exportation of materials in violation of the" federal export laws. In this context—the search of the offices of an export company—these limitations provide no limitation at all. The warrant authorizes, and the customs agents conducted, a general search of the Kleinberg offices.[13]

### A. *The warrant is facially overbroad.*

■ The Kleinberg warrant suffers from three flaws. First, it authorizes a general search in conjunction with a federal crime and is overbroad on its face. In *Voss v. Bergsgaard,* 774 F.2d 402 (10th Cir.1985), we invalidated a similar warrant. The warrant in *Voss* authorized government agents to seize documents and records "[a]ll of which are evidence of violations of Title 18, United States Code, Section 371." *Id.* at 405. We concluded that "[e]ven if the reference to Section 371 [the federal conspiracy statute] is construed as a limitation, it does not constitute a constitutionally ade-

quate particularization of the items to be seized." *Id.*[14]

The government argues that *Voss* does not apply here because the export statutes describe a much narrower range of criminal activity. We disagree. While some federal statutes may be narrow enough to meet the fourth amendment's requirement, the two statutes cited by the Kleinberg warrant cover a broad range of activity and the reference to those statutes does not sufficiently limit the scope of the warrant.[15]

Moreover, a series of decisions from other circuits have held that reference to a broad federal statute is not a sufficient limitation on a search warrant. For example, in *Roche v. United States,* 614 F.2d 6, 7 (1st Cir.1980) the warrant authorized the seizure of books, records and documents "which are evidence, fruits, and instrumentalities of the violation of Title 18, United States Code Section 1341 [mail fraud]." The court found this limitation to be "no

13. The government cites a number of cases where warrants for business records have been held sufficiently particular to meet the requirements of the fourth amendment. We have reviewed these cases and find that they do not support the government's claim, as the warrants in question were more particular than the one we review here, or the warrants were as particular as the information available would allow. *See, e.g., Andresen v. Maryland,* 427 U.S. 463, 481–82, 96 S.Ct. 2737, 2749, 49 L.Ed.2d 627 (1976) (documents limited to a specific transaction); *United States v. Lamport,* 787 F.2d 474, 476 (10th Cir.) (more specific warrant), *cert. denied,* — U.S. ——, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986); *Marvin v. United States,* 732 F.2d 669, 673–74 (8th Cir.1984) (records to be seized limited by type and date); *United States v. Wuagneux,* 683 F.2d 1343, 1350 n. 5 (11th Cir. 1982) (more specific warrant), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *United States v. Timpani,* 665 F.2d 1, 4–5 (1st Cir.1981) ("it is difficult to see how the search warrant could have been made significantly more precise"); *United States v. Dennis,* 625 F.2d 782, 792 (8th Cir.1980) (warrant as specific as circumstances would allow). None of the decisions cited by the government allow a general description where the information was readily available to significantly narrow the search. The government argues that *Andresen* authorizes the seizure of general business records, but the warrant in *Andresen* was limited to a specific transaction. *See* In re *Grand Jury Proceedings (Young),* 716 F.2d 493, 498 n. 7 (8th Cir.1983); *United States v. Roche,* 614 F.2d

6, 7 n. 2 (1st Cir.1980). If the Kleinberg warrant had been explicitly limited to documents related to the Micro-tel transaction it would be comparable to the warrant in *Andresen.*

14. *Voss* differs from the current case in two respects. First, the search in *Voss* implicated first amendment concerns that are not present here. Second, the conspiracy statute is arguably broader than the export statutes cited in the Kleinberg warrant. However, neither distinction is reason to depart from our holding. The first amendment concerns were not central to the decision but merely made the "warrants' overbreadth ... even more egregious." *Voss,* 774 F.2d at 405. Similarly, the differences in the statutes cited are not significant.

15. We emphasize that it is not the mere reference to the statute that makes the Kleinberg warrant overbroad, it is the *absence of any limiting features.* In other words, the warrant is limited neither by the list of records to be seized, nor by the reference to the export statutes. If the warrant were narrower in either respect, or if it included some other limitation, we might find it valid. For example, this court found the warrant in *United States v. Lamport,* 787 F.2d 474, 476 (10th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986), sufficiently specific where the statutory reference (to the mail fraud statute) was limited by a list of specific items (medical records limited by patients and dates).

limitation at all." *Id.* at 8. The Ninth Circuit has consistently applied the same rule. In *United States v. Cardwell,* 680 F.2d 75, 77 (9th Cir.1982), "[t]he only limitation on the search and seizure of appellants' business papers was the requirement that they be the instrumentality or evidence of violation of the general tax evasion statute, 26 U.S.C. § 7201. That is not enough." The court's reasoning in *Cardwell* is equally applicable here:

> " '[L]imiting' the search to only records that are evidence of the violation of a certain statute is generally not enough.... If items that are illegal, fraudulent, or evidence of illegality are sought, the warrant must contain some guidelines to aid the determination of what may or may not be seized."

*Id.* at 78. Where the warrant provides no such guidelines, it is impermissibly overbroad on its face. *See also Rickert v. Sweeney,* 813 F.2d 907, 909 (8th Cir.1987) (warrant limited only by references to the general conspiracy statute and general tax evasion statute did "not limit the search in any substantive manner"); *United States v. Spilotro,* 800 F.2d 959, 965 (9th Cir.1986) ("effort to limit discretion solely by reference to criminal statutes was inadequate"); *United States v. Abrams,* 615 F.2d 541, 542–43 (1st Cir.1980) (warrant limited only by reference to records and federal fraud statute is overbroad); In re *Lafayette*

*Academy,* 610 F.2d 1, 3 (1st Cir.1979) (overbroad warrant allowed "seizure of most every sort of book or paper ... limited only by the qualification that the seized item be evidence of violations of ... '18 U.S.C. 286, 287, 371, 1001 and 1014.' ").

We agree with the reasoning of these courts. As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized.[16] *See* 2 LaFave, § 4.6(a), at 235–36. The Kleinberg warrant does not provide that guidance. An unadorned reference to a broad federal statute does not sufficiently limit the scope of a search warrant. Absent other limiting factors, such a warrant does not comply with the requirements of the fourth amendment.[17] *See Andresen v. Maryland,* 427 U.S. 463, 480–82, 96 S.Ct. 2737, 2748–49, 49 L.Ed.2d 627 (1976).

Nor did the list of business records to be seized provide any meaningful limitation on the Kleinberg search. The warrant encompassed virtually every document that one might expect to find in a modern export company's office. Again, the fourth amendment requires more. *See Id.; see also In re Grand Jury Proceedings (Young),* 716 F.2d 493, 498 (8th Cir.1983) ("laundry list of various type of records is insufficient to save the search warrant"); *Roberts v. United States,* 656 F.Supp. 929, 934 (S.D.N.Y.1987) ("By listing every type

---

**16.** The government argues that the "agents based their decisions on the guidelines set forth in the warrant which they testified was sufficiently descriptive." Brief of Appellant at 39. But the government's citations to the record of the suppression hearing do not support that assertion. The record clearly indicates that the agents relied on Agent Juhasz' instructions. *See, e.g.,* R. Vol. III at 31–32, 45–47. The only acknowledged guidance from the face of the warrant by the agents is that they "were looking for records reflecting possible violations of the Export Administration Act, ..." *Id.* at 30.

**17.** In *United States v. Sawyer,* 799 F.2d 1494 (11th Cir.1986) the Eleventh Circuit found that a warrant limited only by a list of records and documents and two federal statutes met the fourth amendment's particularity requirement. However, in contrast to the situation here, the business in *Sawyer* was "permeated with fraud and ... this fraud affected *all* [the defendant's] customers." *Id.* at 1508 (emphasis in original). Accordingly, "the government had no obligation

to restrict the search to specific documents where the evidence" supported the broad search and seizure authorized by the warrant. *Id.* But see *Voss,* 774 F.2d at 406 ("[A] warrant that simply authorizes the seizure of all files, whether or not relevant to a specified crime, is insufficiently particular.") Similarly, the Seventh Circuit approved a warrant for "documents, papers, receipts, and other writings which are evidence of a conspiracy to violate Title 21, U.S.C., Section 963 [conspiracy to import heroin]" in *United States v. Vanichromanee,* 742 F.2d 340, 347 (7th Cir.1984) (brackets in original). The warrant, however, authorized only the search of an attache case—"a logical place to store hotel receipts, airline tickets, and other writings that might evidence a conspiracy to import heroin." *Id.* at 347. When combined with the statutory limitation, the court found the warrant did not "authorize a general, exploratory rummaging" through the defendant's belongings. *Id.*

of record that could conceivably be found in an office, the warrant effectively authorized the inspectors to cart away anything that they could find on the premises."); *cf. Cardwell*, 680 F.2d at 78; *Abrams*, 615 F.2d at 543; *Roche*, 614 F.2d at 7; *Lafayette Academy*, 610 F.2d at 5.

We recognize that some lower courts have found similar warrants to be sufficiently particular. The government relies on *United States v. Moller–Butcher*, 560 F.Supp. 550, 557 (D.Mass.1983) where the district court found a warrant seeking "records which are required under the Export Administration Act, 15 C.F.R. § 387.13, by all businesses sending electronic equipment outside the United States" to be sufficiently particular. The district court in *United States v. Gregg*, 629 F.Supp. 958, 966–67 (W.D.No.1986), *aff'd* 829 F.2d 1430 (8th Cir.1987), approved a similar warrant. We are unpersuaded by these decisions. Neither court clearly explained why the warrant in question is sufficient; the analysis is brief and conclusory.[18] Moreover, there are distinguishing features that limit the value of these decisions in our present inquiry.[19]

The government also argues that the facial overbreadth of the warrant is not fatal because any doubts about what was to be seized "could be resolved by resort to the affidavit which was a part of the warrant and which the agents had with them at the location of the search." Brief of Appellant at 38. We disagree. It is true that the particularity of an affidavit may cure an overbroad warrant, but only "where the affidavit and the search warrant ... can be reasonably said to constitute one document. Two requirements must be satisfied to reach this result: first, the affidavit and search warrant must be physically connected so that they constitute one document; and second, the search warrant must expressly refer to the affidavit and incorporate it by reference using suitable words of reference." 2 LaFave, § 4.6(a), at 241 (quoting *Bloom v. State*, 283 So.2d 134 (Fla.App.1973)); *see Id.* cases cited at n. 28; 3 C. Wright, *Federal Practice and Procedure* § 670, at 723 (2d ed. 1982); *United States v. Medlin*, 798 F.2d 407, 410 n. 1 (10th Cir.1986) ("When an affidavit is attached to a warrant and incorporated by reference into the warrant, it can be used to cure a lack of particularity.");[20] *United States v. Hayes*, 794 F.2d 1348, 1354 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987) (affidavits did not accompany warrant); *United States v. Strand*, 761 F.2d 449, 453 (8th Cir.1985) (affidavit accompanied warrant but was not incorporated).

The Kleinberg warrant did not incorporate the affidavit; there is no reference to the affidavit on the face of the warrant. In addition, there is no clear evidence in the record to support the government's assertion that the affidavit "was a part of the warrant." Finally, and perhaps most importantly, the search itself was not limited by the affidavit. If the affidavit was available to the agents searching the Kleinberg

---

**18.** "Search warrants for documents are generally deserving of somewhat closer scrutiny with respect to the particularity requirement because of the potential they carry for a very serious intrusion into personal privacy." 2 LaFave, § 4.6(d), at 249–50; *see Andresen*, 427 U.S. at 482 n. 11, 96 S.Ct. at 2749 n. 11; *see also United States v. Washington*, 797 F.2d 1461, 1472 (9th Cir.1986) ("[W]here a business is searched for records, specificity is required to ensure that only the records which evidence crime will be seized and other papers will remain private."). We are not convinced that *Gregg* and *Moller–Butcher* sufficiently scrutinized the warrants.

**19.** For example, *Moller–Butcher* does not recite the full text of the warrant, but quotes only one phrase. We cannot be certain that the *Moller–Butcher* warrant was as broad as the one the government asks us to approve here. In addition, the affidavit in *Moller–Butcher* "detail[ed] the results of a two-year investigation and list[ed] at least three specific instances of the export of items without a validated license." *Moller–Butcher*, 560 F.Supp. at 555. In *Gregg*, the court found that the breadth of the seizure was justified by "the suspected breadth of the business's criminal activity." *Gregg*, 629 F.Supp. at 967.

**20.** As the citation to *Medlin* indicates, the Tenth Circuit requires both attachment and incorporation. We do not follow the more relaxed rule discussed by the Eleventh Circuit in *United States v. Wuagneux*, 683 F.2d 1343, 1351 n. 6 (11th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983), and cited by the government.

offices, it certainly was not used to limit the search.[21] The agents seized documents related to transactions, countries and commodities not mentioned in the affidavit. In fact, the agents seized documents unrelated to Kleinberg's export business.[22] Even if the technical requirements for incorporation were met, it would be improper to allow the affidavit to cure the lack of particularity in the warrant where the government agents relied on the breadth of the warrant, not the specificity of the affidavit, to define the scope of the search. *Cf. United States v. Spilotro,* 800 F.2d 959, 967 (9th Cir.1986) ("government's argument that the agents were somehow constructively guided by the affidavit in executing the warrants is unpersuasive"); *Lafayette Academy,* 610 F.2d at 5 ("[S]elf-restraint on the part of the ... executing officers does not erase the fact that under the broadly worded warrant appellees were subject to a greater exercise of power than that which may have actually transpired and for which probable cause had been established. The particularity requirement is a check to just this sort of risk." (citations omitted)).

**B. *Information was available to make the warrant more particular.***

In addition to being overbroad on its face, the Kleinberg warrant is flawed because information was available to the government to make the description of the items to be seized much more particular.

Admittedly, a general description is not always invalid.

> "Courts tend to tolerate a greater degree of ambiguity [in the warrant's description] where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant."

*United States v. Young,* 745 F.2d 733, 759 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). In this case, however, the government's argument that the warrant was "as specific as the circumstances and the nature of the activity under investigation permit" is untenable. Agent Juhasz' affidavit in support of the warrant was very specific, alleging the attempted illegal export of a specific product to the People's Republic of China via a series of specific companies in Hong Kong. Yet none of this information was reflected in the warrant. The warrant could have been limited to documents related to the Micro-tel transaction, to the companies suspected of participating in the illegal export, to the countries involved in the route of the export, Hong Kong and China, or to a specific period of time coincident to the suspect transaction. Yet the government chose to include none of these limiting factors. As the Ninth Circuit found in *Spilotro,*

---

**21.** The district court concluded:

[T]he manner of the warrant's execution demonstrates its breadth. Before the search, Agent Juhasz briefed the other agents that they were specifically looking for information about exports to Hong Kong companies, which limitation does not appear anywhere on the face of the search warrant. During the search, the agents would ask Agent Juhasz whether a particular item should be seized. The warrant was not sufficiently particular to confine the search to evidence relating to a specific crime and to curtail the discretion of the officer executing the warrant.

Mem.Opinion at 9. The evidence at the suppression hearing supports the district court's conclusion. Agents executing the warrant were constantly seeking Agent Juhasz' directions regarding which documents to seize and those di-

rections expanded as the search progressed. Thus, the circumstances here are dramatically different than those in *United States v. Lamport,* 787 F.2d 474, 476 (10th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986), where this court noted the executing officer's familiarity with the alleged criminal scheme and the affidavit in affirming a district court's denial of a motion to suppress.

**22.** As in *Voss,* "[t]he insufficient particularity of the warrants ... is ... illustrated by some of the items actually seized.... The warrants ... allowed precisely the kind of rummaging through a person's belongings, in search of evidence of even previously unsuspected crimes or of no crime at all, that the fourth amendment proscribes." *Voss,* 774 F.2d at 405.

"[T]he government could have narrowed most of the descriptions in the warrants either by describing in greater detail the items one commonly expects to find on premises used for the criminal activities in question, or at the very least, by describing the criminal activities themselves rather than simply referring to the statute believed to have been violated. As the warrants stand, however, they authorize wholesale seizures of entire categories of items not generally evidence of criminal activity, and provide no guidelines to distinguish items used lawfully from those the government had probable cause to seize."

*Spilotro*, 800 F.2d at 964; *see also United States v. Fuccillo*, 808 F.2d 173, 176 (1st Cir.) (" 'In light of the information available to the agents which could have served to narrow the scope of the warrant and protect the defendants' personal rights, the warrant was inadequate.' ") (quoting *United States v. Klein*, 565 F.2d 183, 190 (1st Cir.1977)), *cert. denied*, —— U.S. ——, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987); *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. Unit A Sept.1981) ("Failure to employ the specificity available will invalidate a general description in a warrant.").

### C. *The scope of the warrant exceeded the probable cause.*

 The final factor leading us to conclude that the Kleinberg warrant was impermissibly overbroad is that even if we assume that Agent Juhasz' affidavit established probable cause to issue a search warrant, the scope of the warrant far exceeded the probable cause to support it. The fourth amendment requires not only that the warrant sufficiently specify the evidence to be seized, but also that the scope of the warrant be limited to the specific areas and things for which there is probable cause to search. *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987). "An otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." 2 LaFave, § 4.6(a), at 236; *see United States v. Bentley*, 825 F.2d 1104, 1110 (7th Cir.) ("When the probable cause covers fewer documents in a system of files, the warrant must ... tell the officers how to separate the documents to be seized from others."), *cert. denied*, —— U.S. ——, 108 S.Ct. 240, 98 L.Ed.2d 198 (1987); *Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir.1987) ("Although probable cause existed to search the records of one particular project, the warrant failed to so limit the search."); *Spilotro*, 800 F.2d at 967 (list of criminal statutes in warrant went beyond probable cause in affidavit); *Voss*, 774 F.2d at 408 (Logan, J., concurring) ("The breadth of a warrant must be justified by the breadth of the probable cause."); *cf. VonderAhe v. Howland*, 508 F.2d 364, 369 (9th Cir.1974) ("[A]lthough there may have been 'probable cause' to search for and seize [records of a certain type and date] there was no probable cause shown for a seizure of all the ... books and records, or ... personal and private papers.") In other words, a search warrant is also impermissibly overbroad if it authorizes the search and seizure of evidence that is not supported by probable cause. A generous reading of the affidavit may disclose probable cause for a search of the Kleinberg offices limited to documentary evidence of transactions related to the Micro-tel receiver or to shipments to Hong Kong, but in no event is there probable cause to support a general search for evidence of violations of the export laws. The government asserts that the affidavit "describ[ed] a systematic scheme for committing a specific narrow export offense." Reply Brief of Appellant at 15. That is not accurate; the affidavit includes only a general reference to the export of electronic equipment to the People's Republic of China through Hong Kong, and references no Kleinberg transactions apart from the export of the Micro-tel receiver.

In summary, we find the Kleinberg warrant overbroad in every respect.[23] The

---

**23.** The government also argues on appeal that the customs agents did not "impermissibly exceed the authority of the warrant during the search." Brief of Appellant at 40. We are hesi-

warrant contains no limitation on the scope of the search, it is not as particular as the circumstances would allow or require and it extends far beyond the scope of the supporting affidavit. The warrant is invalid and we must determine if the evidence seized should be suppressed.

## IV. Exclusion

Our conclusion that the Kleinberg warrant was invalid does not necessarily mean that the evidence seized under the warrant

tant to disagree. Given the breadth of the warrant's language and the lack of limitations, it would have been very difficult to exceed the authority of the warrant. Nevertheless, the search and seizure of Leary's personal papers and information unrelated to the export business was beyond the terms of the warrant, supporting the district court's conclusion that the government executed a prohibited general search of the Kleinberg premises. In any event, however, this question is not central to our conclusion that the warrant was invalid. The Kleinberg warrant was overbroad and invalid on its face. The manner of execution provides additional evidence that the search was "unreasonable" and contrary to the fourth amendment. In addition, the district court's finding that the government exceeded the scope of the warrant is a relevant "circumstance" in our decision to exclude the evidence. *See infra.*

The government's reliance on *United States v. Gentry,* 642 F.2d 385, 387 (10th Cir.1981), where this court refused to suppress evidence seized but not named in the warrant because there was "a reasonable relationship to the item named in the warrant" is misplaced for two reasons. First, there was no finding in *Gentry* that the underlying warrant was invalid. Second, the Kleinberg warrant was so broad that virtually any document in the offices would bear "a reasonable relation" to the items named in the warrant. The fourth amendment requires more.

**24.** "[A]lthough the term 'good faith' does not fully capture the objective nature of the inquiry which we must undertake, we will use that term as a 'short-hand description.'" *United States v. Savoca,* 761 F.2d 292, 294 n. 1 (6th Cir.1985) (citations omitted).

**25.** The government does not explicitly request that we consider partial suppression of the evidence of the Kleinberg search, but we infer that argument from the government's brief and reject it. The Ninth Circuit has adopted a rule of partial suppression, that is, "where invalid portions of a warrant may be stricken and the remaining portions held valid, seizures pursuant to the valid portions will be sustained." *United States v. Spilotro,* 800 F.2d 959, 967 (9th Cir.

must be suppressed. The government argues that we should apply the "good faith" exception [24] to the exclusionary rule created in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and reverse the district court's decision. [25] The district court found the good faith exception inapplicable, but we note that whether the "good faith" exception to the exclusionary rule should be applied is a question of law, subject to *de novo* review by this court. [26] *See United States v. Mi-*

1986); *see also United States v. Diaz,* 841 F.2d 1, 4 (1st Cir.1988) (partial suppression); *United States v. Faul,* 748 F.2d 1204, 1219 (8th Cir.1984) (approving partial suppression), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 632 (1985); *United States v. Christine,* 687 F.2d 749, 759 (3d Cir.1982) (adopting partial suppression or "redaction"); *United States v. Cook,* 657 F.2d 730, 735 (5th Cir. Unit A Sept.1981) ("in the usual case the district judge should sever the infirm portion of the search warrant from so much of the warrant as passes constitutional muster"); 2 LaFave, § 4.6(f). However, "severance is not always possible. If no portion of the warrant is sufficiently particularized to pass constitutional muster, then total suppression is required." *United States v. Cardwell,* 680 F.2d 75, 78 (9th Cir.1982); *see also Spilotro,* 800 F.2d at 967 (no portions of the warrant "sufficiently specific and particular to support severance"); *Christine,* 687 F.2d at 758 ("[A]ll evidence seized pursuant to a general warrant must be suppressed."). We find this reasoning applicable here. There is no portion of the Kleinberg warrant that adequately defines the items to be seized. Accordingly, severance is impossible and partial suppression is not appropriate in this case; we leave the question of whether partial suppression may be the appropriate response to an overbroad warrant in this circuit to a later case. *Cf. Voss,* 774 F.2d at 406.

**26.** We also have a different focus than the district court. The district court found that Agent Juhasz' affidavit failed to establish probable cause to obtain the warrant and held the *Leon* exception inapplicable because Juhasz "could not have harbored an objectively reasonable belief in the existence of probable cause." Mem. Opinion at 8 (quoting *Leon,* 468 U.S. at 926, 104 S.Ct. at 3422). In response, the government relies on *United States v. Cardall,* 773 F.2d 1128 (10th Cir.1985) where this court discussed the "good faith" exception in relation to a legally valid affidavit and search warrant. Our focus is on the application of the "good faith" exception to a *facially overbroad* warrant, a question not yet considered in this circuit. Thus, the reasoning of *Cardall* is inapplicable for two reasons: first, the *Cardall* warrant was valid, and second,

*chaelian,* 803 F.2d 1042, 1046 (9th Cir. 1986); *United States v. Maggitt,* 778 F.2d 1029, 1034–35 (5th Cir.1985), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2920, 91 L.Ed.2d 548 (1986).

In *Leon,* the Supreme Court modified the fourth amendment exclusionary rule to provide that evidence seized under a warrant later found to be invalid may be admissible if the executing officers acted in good faith and in reasonable reliance on the warrant. *United States v. Medlin,* 798 F.2d 407, 409 (10th Cir.1986); *see generally* 1 LaFave § 1.3. The *Leon* Court applied the "good faith" exception to admit the evidence from a search warrant subsequently invalidated by a lack of probable cause. In *Massachusetts v. Sheppard,* 468 U.S. 981, 988, 104 S.Ct. 3424, 3427, 82 L.Ed.2d 737 (1984) the Court held that the same exception could also be applied to warrants that violate the fourth amendment's particularity requirement.

Of course, *Leon* does not mean that evidence obtained under an invalid warrant should never be suppressed. "The Court mandated that the exclusionary rule be invoked only in those 'unusual' cases in which its purposes would be served, i.e., in which it would deter police misconduct." *Medlin,* 798 F.2d at 409. The Court also identified certain circumstances where suppression remains an appropriate remedy, including where the warrant is "so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon,* 468 U.S. at 923, 104 S.Ct. at 3420 (citations omitted).[27] In determining whether the exception should be applied, the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably

well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23. To answer this "objectively ascertainable question," we are to consider "all of the circumstances," *id.* and assume that the executing "officers have a reasonable knowledge of what the law prohibits." *Id.* at 919 n. 20, 104 S.Ct. at 3419 n. 20. Accordingly, under *Leon* and *Sheppard,* even though we have previously determined the Kleinberg warrant to be facially invalid, we must also review the text of the warrant and the circumstances of the search to ascertain whether the agents might have "reasonably presume[d] it to be valid." *Leon,* 468 U.S. at 923, 104 S.Ct. at 3420.

■ The application of the "good faith" exception to an overbroad warrant has not yet been directly addressed by this court. However, there is guidance from other courts of appeals. This question has been most frequently considered by the Ninth Circuit. In *United States v. Crozier,* 777 F.2d 1376, 1379 (9th Cir.1985) the government executed a warrant "that did not describe any particular property to be seized; it merely authorized the seizure of 'Material evidence of violation 21 USC 841, 846.' " The court found the warrant facially overbroad and held that the agent could not reasonably rely on it. *Id.* at 1381. "In contrast to the detective in *Sheppard,*" and similar to the customs agents here, the Ninth Circuit found that the agent "did not take 'every step that could reasonably be expected of him.' " *Id.* at 1382 (citing *Sheppard,* 468 U.S. at 989, 104 S.Ct. at 3428). Specifically, the agent in *Crozier* failed to make the warrant as particular as the information available would allow and

the question considered was probable cause, not particularity. *See also United States v. Medlin,* 798 F.2d 407 (10th Cir.1986).

We also note that "[t]he government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable." *United States v. Michaelian,* 803 F.2d 1042, 1048 (9th Cir.1986).

**27.** In addition, application of the "good faith" exception assumes "that the officers properly executed the warrant and searched only those

places and for those objects that it was reasonable to believe were covered by the warrant." *Leon,* 468 U.S. at 918 n. 19, 104 S.Ct. at 3418 n. 19. *See Medlin,* 798 F.2d at 410 (*"Leon* does not apply to issues of improper execution of warrants."); *United States v. Medlin,* 842 F.2d 1194, 1199 (10th Cir.1988) ("When ... officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant.").

"obtained no specific assurance from the magistrate that the overbroad warrant was acceptable." *Id.*

The Ninth Circuit reached the same conclusion in *United States v. Spilotro,* 800 F.2d 959 (9th Cir.1986). In *Spilotro,* the warrant authorized the search and seizure of property and records which were "evidence of violations" of a list of federal criminal statutes. *Id.* at 961. The court relied on *Crozier* to find that the "good faith" exception was inapplicable to a facially overbroad warrant. *See also United States v. Washington,* 797 F.2d 1461, 1473 (9th Cir.1986) ("the overbroad sections of the ... warrant are so facially deficient that any evidence obtained in reliance upon either of them must be suppressed"); *cf. United States v. Michaelian,* 803 F.2d 1042, 1047 (9th Cir.1986) (warrants did not "approximate the degree of facial deficiency which would preclude objective reasonable reliance").

The First Circuit has adopted similar reasoning. In *United States v. Fuccillo,* 808 F.2d 173, 176–77 (1st Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987), the court invalidated warrants that inadequately described the stolen goods to be seized. As in this case, the court found that the "executing agents ... had no 'physical criteria or detailed description in the warrant to enable them to determine what they might lawfully seize.'" *Id.* at 177 (quoting *Montilla Records of Puerto Rico v. Morales,* 575 F.2d 324, 326–27 (1st Cir.1978)). *Fuccillo* also determined that the "good faith" exception was inapplicable, but focused on a different aspect of *Leon.* The warrant in *Fuccillo* authorized the FBI to seize cartons of women's clothing and records related to those cartons. However, in executing the warrant, "the agents seized, in addition to the authorized cartons of *women's* clothing, racks of clothing, empty boxes, and most disturbingly, two racks of *men's* clothing. The *entire contents* of [a] warehouse were

seized." *Id.* at 177–78 (emphasis in original). The court found the "good faith" exception inapplicable for three reasons. First, the agents exceeded the scope of the warrant. Second, the "agents were reckless in not including in the affidavit information which was known or easily accessible to them." *Id.* at 178. Finally, the warrant was " 'so facially deficient ... that the executing officers cannot reasonably presume it to be valid.' " *Id.* at 178 (quoting *Leon,* 468 U.S. at 923, 104 S.Ct. at 3420). *Cf. United States v. Diaz,* 841 F.2d 1, 6 (1st Cir.1988) ("[W]hile the warrant was overbroad ..., it was not so facially deficient that [the Agent] could not have reasonably and in good faith believed that it adequately authorized the search he undertook.").[28] The findings in *Fucillo* parallel our analysis of the Kleinberg warrant and search.

We are also in accord with the Eighth Circuit's analysis of the "good faith" exception in *United States v. Strand,* 761 F.2d 449 (8th Cir.1985). The warrant in *Strand* authorized the search of an apartment for "stolen mail which is evidence of and the fruits of the crime of theft from the mail." *Id.* at 452. The postal inspectors executing the warrant found stolen mail, but also seized certain household items that matched items that had been reported missing. The court held that the "warrant authorized a search only for 'stolen mail,' and that it did not describe the other items to be seized with sufficient particularity to be valid under the Fourth Amendment." *Id.* at 453–54. The court then considered whether the evidence was admissible under the "good faith" exception, concluding that there was no "objectively reasonable basis for the postal inspectors to have believed that the warrant authorized the seizure of [the household] items" and that the exception did not apply.[29] *Id.* at 456. Again, the court's reasoning is applicable to the Kleinberg warrant and search. First, the *Strand* court noted that the "seizure of ordinary household goods ... went far beyond the seizure expressly authorized by

---

**28.** *Diaz* is unusual in that the court applied the "good faith" exception to part of the documents seized, but not others. *See Diaz,* 841 F.2d at 4 n. 1.

**29.** Ultimately, *Strand* was remanded to determine if any of the items seized were admissible under the plain view doctrine. *Strand,* 761 F.2d at 457.

the warrant...." *Id.* Second, the "seizure of household items ... not only went beyond the seizure contemplated by the warrant, but also went far beyond the seizure contemplated by the affidavit." *Id.* at 457. Thus, the postal inspectors could not "reasonably believe" they had the authority to seize the household items. The court also found "no showing of any good reason for the lack of more particularized descriptions." *Id.*

We have found only one appellate decision that reaches a contrary conclusion.[30] In *United States v. Buck*, 813 F.2d 588 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987) police officers were investigating the robbery of an armored car. Witnesses identified a car leaving the scene with several gunmen. Working through the night, the police traced the car to an apartment and sought a telephone warrant to search the apartment. The judge placed the officer under oath, elicited details of the crime and investigation and then verbally authorized a warrant "to seize any papers, things or property of any kind relating to previously described crime." *Id.* at 590. The court found the language of the warrant impermissibly broad, but found no police misconduct: "While it can safely be said that the police here performed reasonably under the circumstances and collected all the 'descriptive facts' they could ... they clearly did not insure that all known facts were included in the warrant. The warrant only de-

scribed the crimes—and gave no limitation whatsoever on the kind of evidence sought." *Id.* at 591–92. The court found the evidence admissible under *Leon* and *Sheppard* because "the officers made considerable efforts to comply with the dictates of the Fourth Amendment." *Id.* at 592. The court reasoned that the evidence should not be suppressed because "the law was unsettled as to how particular the description of the articles to be seized must be" and under those circumstances, "a reasonably well-trained police officer could not be expected to know that the warrant" violated the fourth amendment. *Id.* at 593.

Obviously, *Buck* presents a different factual situation than we face here. Moreover, we are not expecting the agents to anticipate legal determinations or resolve ambiguities in the law. A reasonably well-trained officer should know that a warrant must provide guidelines for determining what evidence may be seized.[31] A warrant that directs an officer to seize records "relating to" violations of the federal export laws offers no such guidelines. The officers were left to their own discretion.

We conclude that the government may not rely on the "good faith" exception in this case and that all evidence seized under the Kleinberg warrant should be suppressed. We find the warrant so facially deficient in its description of the items to be seized that the executing officers could not reasonably rely on it. That conclusion

---

**30.** A second decision, *United States v. Accardo,* 749 F.2d 1477 (11th Cir.), *cert. denied,* 474 U.S. 949, 106 S.Ct. 324, 88 L.Ed.2d 295 (1985), is cited by the government and the Second Circuit, *see United States v. Buck,* 813 F.2d 588, 592 n. 1 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987), for the proposition that agents may reasonably rely on an overbroad warrant. In fact, *Accardo* held that the "good faith" exception might apply, but remanded the question to the district court for "a hearing on the good faith issue." *Accardo,* 749 F.2d at 1481.

The government also refers us to *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), but we find that decision irrelevant. In *Garrison,* there was "no claim that the 'persons or things to be seized' were inadequately described or that there was no probable cause to believe that those things might be found in 'the place to be searched'.... The question [was] whether [a] factual mistake

invalidated a warrant." *Id.* at 1017. The Court resolved this question without resort to the "good faith" exception of *Leon.*

**31.** Professor LaFave has discussed a similar argument:

"One might argue, ... that a facially deficient warrant is bad precisely because the description is not 'such that the officer with a search warrant can, with reasonable effort ascertain and identify' the place or thing referred to, and that whenever the officer finds himself in this predicament he can hardly be reasonably relying on the warrant. That is, the lack of particularity in the warrant tells the officer he has been given insufficient direction and thus he can hardly reasonably rely upon that warrant."

1 LaFave, § 1.3(f), at 70 (footnotes omitted). We find this logic persuasive and consistent with *Leon* and *Sheppard.*

is reinforced by the government's conduct and the circumstances of the search. This is one of those "unusual" cases where suppression of the evidence is appropriate to deter government misconduct. As we said in *United States v. Owens*, 782 F.2d 146, 152 (10th Cir.1986), the search here "exemplifies the very type of official conduct the exclusionary rule is intended to deter."[32] Accordingly, we hold that the "good faith" exception is inapplicable in these circumstances and affirm the district court's decision to suppress all of the evidence from the Kleinberg warrant.

### V. Probable Cause

Because we have decided to suppress the evidence based on the warrant's overbreadth, there is no need to review the district court's decision that the warrant was not supported by probable cause.

The district court's decision granting defendants' motion to suppress is AFFIRMED.

---

**32.** In addition to objecting to the conduct of the search and the seizure of unrelated personal and business documents, we are troubled by the essentially duplicitous argument that the government makes to support the search. When Leary and Kleinberg argue that the warrant was overbroad, the government points to the affidavit's focus on the Micro-tel transaction and the Hong Kong connection as a sufficient limit on the search. When the defendants argue that the agents exceeded the scope of the search by seizing documents unrelated to the Micro-tel transaction or the Hong Kong companies, the government relies on the language of the warrant, authorizing an unlimited search of the premises for evidence of export law violations. We will not allow the government to have it both ways.