UNITED STATES of America, Plaintiff,

v.

Charles William GOFF, Sr., et al., Defendants.

No. 86–CR–0168–S.

United States District Court,
D. Utah,
Central Division.

Feb. 16, 1990.

Bruce C. Lubeck, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff.

Max D. Wheeler, Snow, Christensen & Martineau, Salt Lake City, Utah, for defendants.

### MEMORANDUM DECISION

SAM, District Judge.

This matter is before the court on the renewed motion to suppress made by defendants Charles Goff, *et al.* (the Goffs). This court has agreed to review its December 30, 1987 memorandum decision, *United States v. Goff,* 677 F.Supp. 1526 (D.Utah 1987), in light of *United States v. Leary,* 846 F.2d 592 (10th Cir.1988).[1] The facts upon which this decision is based are adequately set forth in *Goff,* 677 F.Supp. at 1529–1531.

Goffs have raised numerous issues by their renewed motion which are unrelated to the issues addressed by the *Leary* court. Because this court has only agreed to reconsideration in light of *Leary,* those extraneous issues will not be discussed herein. This court sees no reason to depart from its

---

1. Pursuant to the requests of both the plaintiff and defendants, counsel have been granted liberal time and extensions to brief and argue the

issues covered by the court's first and second memorandum decisions.

earlier decision and therefore abides by that decision as it pertains to the issues not addressed by the *Leary* court. This Memorandum Decision will be confined to the application of *Leary* to the present facts.

*Leary* was a criminal case in which the defendants moved for suppression of evidence seized under a search warrant. The warrant was executed at the offices of the F.L. Kleinberg Company (Kleinberg). Kleinberg and a vice-president were subsequently indicted.

The search warrant was obtained by federal customs agent, John Juhasz, on the basis of his detailed affidavit alleging violations of the Arms Export Control Act, 22 U.S.C. § 2778, and the Export Administration Act. The alleged violations detailed in the affidavit pertained to a single transaction—the purchase and attempted export of a Micro-tel Precision Attenuation Measurement Receiver by Kleinberg in 1984. The warrant which was issued on the basis of that affidavit authorized a search of the Kleinberg offices and seizure of the following:

> Correspondence, Telex messages, contracts, invoices, purchase orders, shipping documents, payment records, export documents, packing slips, technical data, recorded notations, and other records and communications relating to the purchase, sale and illegal exportation of materials in violation of the Arms Export Control Act, 22 U.S.C. 2778, and the Export Administration Act of 1979, 50 U.S.C.App. 2410.

*Leary,* 846 F.2d at 594.

The property seized pursuant to execution of the warrant included

> [t]wenty boxes of business records ... including references to sales and sales contacts throughout the world, telexes to Australia and South Africa, information from applicants for employment with Kleinberg, Leary's application with Shearson American Express for personal financial planning, Leary's life insurance policy, and correspondence relating to

other businesses for which Leary acted as sales representative.

*Leary,* 846 F.2d at 594–595.

After the indictment, Kleinberg and Leary moved for suppression of all the evidence seized. The district court granted the motion holding that there was no probable cause supporting the affidavit, that the warrant inadequately specified the items to be seized and that the "good faith" exception to the exclusionary rule was inapplicable.

The government appealed to the Tenth Circuit which affirmed the decision of the district court. The *Leary* court found that the warrant was impermissibly overbroad in that it contained no meaningful limitations as to the property to be searched. The affidavit did not provide any meaningful limitation either as it had not been incorporated by the affidavit nor was it relied on by the agents executing the warrant in a manner that would have limited the search.

The court specifically held that the warrant was defective because the government had available to it information which could have made the description of items to be seized much more particular. Although the Juhasz affidavit was quite specific, that specificity was not reflected by the issuing warrant.

Finally, the court held that the scope of the warrant exceeded any probable cause. Assuming the Juhasz affidavit established probable cause to issue a warrant, the scope of the warrant should have been limited to documentary evidence of transactions relating to the Micro-tel receiver or to shipments to Hong Kong. The Juhasz affidavit, however, did not support a general search of the business.[2]

Due to the fatal overbreadth of the warrant the court refused to apply the "good faith" exception to the exclusionary rule. The court held that "[t]his is one of those 'unusual' cases where suppression of the evidence is appropriate to deter governmental misconduct." *Id.* at 610.

---

**2.** The court did not reach the issue of whether    the affidavit was supported by probable cause.

At the outset it is important to note that application of *Leary* to this case is limited because the *Leary* facts are distinguishable in several significant respects. First, *Leary* involved a criminal search warrant. Here Warrant I is an administrative inspection warrant which has different standards for probable cause and a different purpose, that is, verifying compliance with the Gun Control Act. Second, *Leary* focused on a single transaction easily isolated in time. The instant case involves a manufacturing process in which general compliance prior to a specific date is at issue; the process is not easily isolated in a solitary transaction. Third, in *Leary*, the agents had an abundance of reliable information and recited in their affidavit details surrounding the illegal exportation. Despite the specificity of information the agents possessed, their warrant contained only general information. In *Goff*, the agents were limited in the reliable information they had received and sought to ascertain compliance through an administrative inspection. In contrast, the Goff warrants contained the degree of specificity of information found in the affidavits. Fourth, the business searched in the *Leary* case was not a closely regulated industry in contrast to the firearms industry in which the Goffs participated. *Leary*, 846 F.2d at 597. *See Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1968) (liquor); *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (firearms). The Goffs, as manufacturers of firearms, participated in a closely regulated industry and therefore had a reduced expectation of privacy in the fire-

arms and records at issue. *Goff,* 677 F.Supp. at 1531–35.

*Warrant 1*

1. *Issuance*

The Goffs, in their renewed motion to suppress, allege that Warrant 1 was constitutionally defective for lack of probable cause. Where the *Leary* court specifically declined to address the issue of probable cause, this court also declines to reconsider the portions of its memorandum decision addressing probable cause. *Leary,* 846 F.2d at 610, 598 n. 6. This includes the issue of whether probable cause, independent of statutory authority, is necessary for issuance of an administrative inspection warrant.

For the same reason, this court also refuses to reexamine the propriety of issuing Warrant 1 as an administrative inspection warrant rather than as a criminal search warrant. The court is not moved from its earlier decision on that question.

2. *Breadth*

The Goffs next allege that Warrant 1 was constitutionally infirm under *Leary* because its breadth exceeded the scope of the probable cause statement.[3] Specifically, the Goffs allege that Warrant 1 allowed Agent Bauer to inspect and examine "every type of firearm, receiver and silencer on the premises" as well as inspect "[f]irearm records relating to other machine guns, firearms, dates, companies and transactions." Goff Memo at 22.

Warrant 1 was issued for inspection and examination pursuant to Chapter 44, 18 U.S.C. Section 923(g).[4] That section pro-

---

**3.** Again, *Leary*'s applicability to the issue at hand is limited since *Leary* dealt solely with a criminal search warrant rather than a routine administrative compliance inspection. Also, the industry in question in *Leary* was not a "closely regulated industry," therefore the export company enjoyed a greater expectation ·of privacy. Finally, the *Leary* court determined the export statute in question was overbroad while the Gun Control Act of 1968 is sufficiently narrow to safeguard fourth amendment concerns even in the context of warrantless searches. *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972).

**4.** Section 923(g), 18 U.S.C. provides:
  Each licensed importer, licensed manufacturer, licensed dealer, and licensed collector shall maintain such records of importation, production, shipment, receipt, sale, or other disposition, of firearms and ammunition at such place, for such period, and in such form as the Secretary [of the Treasury] may by regulations prescribe. Such importers, manufacturers, dealers, and collectors shall make such records available for inspection at all reasonable times, and shall submit to the Secretary such reports and information with respect to such records and the contents thereof as he shall by regulations prescribe. The Secretary may enter during busi-

vides for inspection or examination of "any firearms or ammunition kept or stored [by the manufacturer]" as well as "any records or documents required to be kept by such ... manufacturer ... under the provisions of this chapter or regulations issued under this chapter." 18 U.S.C. § 923(g) and 27 C.F.R. § 172.23. The records or documents required to be kept include "records of importation, production, shipment, receipt, sale, or other disposition of firearms and ammunition...." 18 U.S.C. § 923(g) and 27 C.F.R. § 178.121.

The *Leary* court, in finding a criminal search warrant overbroad, noted that "the two [export] statutes cited [in the criminal search] warrant cover a broad range of activity and the reference to those statutes does not sufficiently limit the scope of the warrant." *Leary*, 846 F.2d at 601. However, the *Leary* court also observed that "some federal statutes may be narrow enough to meet the fourth amendment's requirement." *Id.* The firearms industry is one of only two industries singled out for close governmental control to the extent that even warrantless searches will not violate the fourth amendment rights of a firearms manufacturer or dealer. *Biswell*, 406 U.S. at 316, 92 S.Ct. at 1596 (*see also* thorough discussion of *Biswell* in this court's original Memorandum Decision in *Goff*, 677 F.Supp. at 1531–38.)

This court concludes that Section 923(g) of the Gun Control Act is one of the federal statutes to which the *Leary* court made reference as "narrow enough to meet the fourth amendment's requirement." *Leary*, 846 F.2d at 601; *see also Biswell*, 406 U.S. at 316, 92 S.Ct. at 1596. Accordingly this court sees no reason to depart from its earlier determination that Warrant I was neither overbroad on its face nor beyond the scope of the probable cause statement.

### 3. *Execution*

The Goffs next contend that BATF's search and seizure under Warrant 1 exceeded the warrant's limitations. Specifically, the Goffs allege: first, that the BATF examination of ARDCO's Form 2 records exceeded the limits of Warrant 1; and second, that the BATF seizure of any records whatsoever exceeded the parameters of Warrant 1.

### a. Examination of Form 2 records

The Goffs allege that Agent Bauer's examination of ARDCO's Form 2 records exceeded the limitations of Warrant 1. Specifically, that Form 2 records (of production) are not required documents under 18 U.S.C., Chapter 44 and 27 C.F.R. §§ 178, 123–125. In support of this allegation, the Goffs make only a cursory reference to *Leary*. Again, any application of *Leary* to this issue is tenuous because *Leary* involved standards applicable to criminal search warrants rather than administrative warrants.

■ This court agrees with the government that 18 U.S.C. § 926 authorizes the Secretary to prescribe rules and regulations as he deems necessary to carry out the provisions of the chapter. The Secretary promulgated regulations at 27 C.F.R. § 179.131 requiring Form 2 records to be maintained in chronological order at the manufacturer's place of business. Under 27 C.F.R. § 179.103, a copy of the Form 2 records must be kept with the manufacturer's acquisition and disposition records which are required under Part 178 to be kept at his business premises. These regulations were promulgated under the authority of 18 U.S.C. § 926 and demonstrate that

---

ness hours the premises (including places of storage) of any firearms or ammunition importer, manufacturer, dealer, or collector for the purpose of inspecting or examining (1) any records or documents required to be kept by such importer, manufacturer, dealer, or collector under the provisions of this chapter or regulations issued under this chapter, and (2) any firearms or ammunition kept or stored by such importer, manufacturer, dealer, or collector at

such premises. Upon the request of any State or any political subdivision thereof, the Secretary may make available to such State or any political subdivision thereof, any information which he may obtain by reason of the provisions of this chapter with respect to the identification of persons within such State or political subdivision, who have purchased or received firearms or ammunition, together with a description of such firearms or ammunition.

Form 2 records must remain with the acquisition and development records.

The fourth amendment does not protect against all searches and seizures, but only against those which are unreasonable. *United States v. Walsh*, 791 F.2d 811, 814 (10th Cir.1986) (citing *United States v. Espinosa*, 782 F.2d 888, 890 (10th Cir. 1986)). In assessing the reasonableness of Agent Bauer's review of ARDCO's Form 2 records, this court remains persuaded that *Biswell* controls and that Agent Bauer's review of ARDCO's Form 2 records was reasonable.[5] *See Goff*, 677 F.Supp. at 1531–1536.

■ The primary object of the fourth amendment is to protect privacy. In *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the U.S. Supreme Court observed "certain industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise." *Id.* at 313, 98 S.Ct. at 1821 (citations omitted). The Goffs, as participants in the heavily regulated firearm industry, had no reasonable expectation of privacy in the Form 2 records. This fact is further underscored by the requirement with which Goffs complied that they file the Form 2 records with the BATF in Washington, D.C. Therefore Goffs' situation is very different from that of the *Leary* defendants who were not participants in a closely regulated industry and thus had a reasonable expectation of privacy.

b. Seizure of any records

The Goffs allege that BATF exceeded the limitations of Warrant 1 by seizing any records whatsoever since Warrant 1 allowed BATF only to "inspect and examine" ARDCO's firearms and records. They also contend that Agent Bauer violated the "business hours" restriction and that the warrant was overbroad and improperly used. In making their arguments, the Goffs attempt to distinguish their case

from cases cited in the court's earlier decision, e.g. *United States v. Cooper*, 409 F.Supp. 364 (M.D.Fla.1976); *N.Y. v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). *See Goff*, 677 F.Supp. at 1538 for discussion of those cases. This court has only agreed to reconsideration in light of *Leary* and, because *Leary* adds nothing new to these issues, the court simply reasserts its original decision that Warrant 1 was proper in all essential respects.

To the extent the *Leary* court addressed issues relevant to Warrant 2, this court will now examine the Goffs' contentions regarding that warrant.

*The Scope and Validity of Warrant 2*

In contesting the validity of Warrant 2, the Goffs reallege that Warrant 2 was issued on facts that do not support a finding of probable cause. As with Warrant 1, since *Leary* failed to address probable cause, this court will not reexamine the probable cause upon which Warrant 2 was issued.

The Goffs next allege that because Warrant 2 did not sufficiently describe with particularity the items to be seized, it was overbroad, exceeded the scope of the probable cause on which it was issued, and failed to include limiting information available to the government. In assessing the requisite particularity of criminal search warrants, the *Leary* court held that

> [t]he test applied to a description of the items to be seized is a practical one. " 'A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized' ".... Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and nature of the activity under investigation permit.... However, the fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and

---

5. At the very least, Form 2 records could also be considered "business records" rather than "production records" which would also make them

"subject to effective inspection" under *Biswell*, 406 U.S. at 316, 92 S.Ct. at 1596.

circumstances allow.... *Leary*, 846 F.2d at 600 (citations and footnote omitted).

The Goffs allege that Warrant 2 exceeded the scope of its probable cause statement since probable cause only existed for the government to search for the 2000 machine guns allegedly produced on May 15 and 17, 1986. The court rejects this argument as nothing more than an attempt to reargue the probable cause issue. The court remains persuaded that probable cause existed for Agent Bauer to search for the 700 firearms and the records and documents.[6] *Goff*, 677 F.Supp. at 1539. Also, in the instant case, the government was forced to rely upon information in records secured from the Goffs. The agents had no assurance the information in the records was conclusive or accurate, particularly where the statute cited in the warrant, 18 U.S.C. § 922(m), alleged falsification of firearms records. This is particularly true regarding the list of serial numbers provided by the Goffs. Finally, this case involved an ongoing process of producing parts, assembling firearms and disposing of firearms rather than a single transaction as in *Leary*. Such material factual differences persuade this court not to depart from its prior decision.

The Goffs consider the omission of the serial numbers of the firearms involved as "particularly egregious." Goff Memo at 38. The Goffs again submit that *United States v. Bright*, 630 F.2d 804 (5th Cir. 1980), required BATF to list the serial numbers. This court has extensively examined *Bright* in its prior memorandum decision and is not persuaded to do so again. *Goff*, 677 F.Supp. at 1542.

As previously noted, the fourth amendment requires that "the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow." *Leary*, 846 F.2d at 600. Under the circumstances surrounding the issuance of Warrant 2, this court has determined that the government's exclusion of the serial numbers was proper as those numbers would not have been available to the government and that the information included was sufficient in scope and particularity to satisfy the requirements of the fourth amendment.

Finally, the Goffs allege Warrant 2 was facially overbroad. The Goffs refer to the *Leary* court's determination that the list of business records in the *Leary* warrant did not meaningfully limit the search. Indeed the *Leary* Court found that the warrant encompassed virtually all the company's documents and allowed the government agents to seize many unrelated personal items. *Leary*, 846 F.2d at 594. *Leary* noted that "[a]s an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized." *Id.* at 602 (citing to 2 LaFave, § 4.6(a), at 236–36). The court continued, "[A]n *unadorned* reference to a *broad* federal statute does not sufficiently limit the scope of a search warrant." *Id.* (emphasis added).

Therefore, equally important to the fact that the sections of the Gun Control Act at issue in this case are much narrower statutes than that addressed in *Leary* is this court's prior determination in the original memorandum decision that the terms "commercial document" and "financial records" were limited by the subsequent language "which are evidence of the fruits

---

**6.** Warrant 2 authorized a search for:

700 firearms, firearms transaction records including, but not limited to ATF Forms 2, Notice of Firearms Manufactured or Imported; ATF Forms 3, Application for Tax Exempt Transfer; ATF Forms 4, Application for Tax Paid Transfer; ATF Forms 5, Application for Tax Exempt Transfer; ATF Forms 4473, Firearms Transaction Records; and commercial documents including, but not limited to, purchase and sales invoices for firearms, parts, and materials thereof, and financial records; which are evidence of

the fruits and instrumentalities of a violation of Title 18, U.S.C. § 922(m).

Section 922(m), 18 U.S.C. provides:

(m) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder.

and instrumentalities of a violation of Title 18, U.S.C. Section 922(m)." *Goff,* 677 F.Supp. at 1540. While the warrant in *Leary* allowed the agents to confiscate many personal items, the return of Warrant 2 contains no objectionable items. Thus the court repeats its earlier decision that the limiting language in Warrant 2 was "sufficiently particular to prohibit the 'general, exploratory, rummaging in a person's belongings' proscribed by [*Andresen v. Maryland* ]." *Id.* (quoting *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976)).

In this case, the government asserts the financial records sought and obtained related solely to the 700 firearms at issue. The Goffs make no specific allegations to the contrary. This court held in its original memorandum decision that since "the items seized did not include personal or private articles, items unrelated to approving a violation of section 922(m) or First Amendment material, the court finds no abuse of warrant regarding these documents." *Goff,* 677 F.Supp. at 1540. This holding is consistent with *Leary.* Thus Warrant 2 is not overbroad and is sufficiently particular to meet the demands of the fourth amendment.[7]

*Warrants 3–7*

Having again determined that Warrants 1 and 2 were properly issued and executed, this court need not address the Goffs' "fruits of the poisonous tree" argument. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Additionally, as *Leary* does not address the issue of probable cause, this court relies on its earlier finding that the affidavits accompanying Warrants 3–7 contain sufficient information to satisfy the probable cause requirements of the fourth amendment.

*Warrant 3*

In opposing Warrant 3, the Goffs allege that typewriter cartridges, photographs, computer floppy discs and a silencer seized by the government should be excluded since they fell outside the scope of the warrant. Without citing any authority, the Goffs allege that total suppression of all items seized is required even though the government does not intend to introduce anything other than the floppy discs into evidence. The Goffs contend that anything less than total suppression "emasculates fourth amendment rights." Goff Memo at 56. This court has already undertaken analysis of this issue in light of *United States v. Heldt,* 668 F.2d 1238 (D.C.Cir. 1981). *See Goff,* 677 F.Supp. at 1546–1547.

This case is much more similar to *Heldt* than to *Leary* in which the Tenth Circuit determined that the circumstances of the search at issue there made *Leary* "one of those 'unusual' cases where suppression of the evidence [was] appropriate." *Leary,* 846 F.2d at 610. This is particularly true where the Goffs fail to point to, and this court fails to find, any significant (and reliable) limiting information of which the BATF was aware yet failed to include. This court therefore considers the disc itself admissible subject to the same limitations outlined in the original memorandum decision. *Goff,* 677 F.Supp. at 1544.·

*Warrants 4 and 6*

■ Warrants 4 and 6 concern the searches and seizures at two of ARDCO's subcontractors at locations other than ARDCO premises. While "standing" is no longer a separate basis of analysis under the fourth amendment, similar analysis

---

7. This court is not moved from its conclusion by the Goffs' assertion that Warrant 2 enabled the government agents to seize the records of two other companies. The records of the two other companies fit within the narrow language of Warrant 2 and also were cross-referenced in the Acquisition and Disposition records maintained by the Goffs.

Neither is this court persuaded to reexamine its conclusion that Agent Bauer's discretion in supervising the execution did not violate the fourth amendment. *See United States v. Wuag-* *neux,* 683 F.2d 1343, 1352–53 (11th Cir.1982). (The supervision by a senior agent assured less risk of overbreadth due to "double-check" procedure which "is not necessarily a sign of excessive discretion." The court continued, "this practice indicates an attempt by the 'responsible officials ... to assure that [the search is] conducted in a manner that minimizes unwarranted intrusions into privacy.'" (quoting *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) and citing to *United States v. Heldt,* 668 F.2d 1238 (D.C.Cir.1981))).

**1094**

must be undertaken by focusing on the "substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." *Leary,* 846 F.2d at 595 (quoting *Rakas v. Illinois,* 439 U.S. 128, 133, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978)).

Regarding this analysis the Tenth Circuit in *Leary* noted:

> Whether a person has standing to contest a search on fourth amendment grounds turns on whether the person had a legitimate expectation of privacy *in the area searched, not merely in the items seized.*

*Leary,* 846 F.2d at 595 (emphasis added) (quoting *United States v. Skowronski,* 827 F.2d 1414, 1418 (10th Cir.1987)). The Goffs do not allege any expectation of privacy in the premises of its subcontractors. Neither does this court find any such expectations to be reasonable. This court therefore relies on its prior determination that Warrants 4 and 6 were properly issued and executed. *Goff,* 677 F.Supp. at 1544–46.

*Warrant 5*

In opposition to Warrant 5, the Goffs raise no new arguments other than those already discussed in this court's earlier examination of Warrant 5. The court therefore relies on its prior holding regarding the issuance and execution of Warrant 5.

*Warrant 7*

The Goffs, in opposing Warrant 7, fail to make any reference to *Leary* or any other authority while raising arguments essentially addressed and dismissed in this court's earlier examination of the constitutional propriety of Warrant 7. This court therefore reasserts its prior holding regarding Warrant 7.

*Total Suppression of the Evidence*

Finally, the Goffs reallege that total suppression is mandated in the instant case due to the intensity and scope of the warrants and the agents flagrant disregard of fourth amendment limitations. Having examined each allegation proffered by the Goffs, this court finds no constitutional improprieties mandating total suppression in the instant case.

 While *Leary* marked the first time the Tenth Circuit had directly addressed the application of the "good faith" exception to an overbroad warrant, such analysis is only necessary in the case of an invalid warrant. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). Having already determined that Warrants 1 through 7 were constitutionally issued and executed, this court finds no grounds for total suppression of the evidence seized under Warrants 1 through 7.

### Conclusion

The Goffs' Renewed Motion to Suppress Evidence is denied and this court abides by its earlier decision *Goff,* 677 F.Supp. 1526.