**UNITED STATES of America, Plaintiff,**

v.

**Harry Edward THOMAS, Defendant.**

**No. 89–CR–218A.**

United States District Court,
D. Utah, C.D.

Sept. 11, 1990.

Michael D. Shepard, Christopher L. Cardani, U.S. Dept. of Justice, Tax Div., Washington, D.C., for plaintiff.

Ronald C. Barker, Salt Lake City, Utah, for defendant.

## ORDER

ALDON J. ANDERSON, Senior District Judge.

### I. INTRODUCTION

Before the court is defendant's motion to suppress evidence obtained through the execution of a search warrant. The court took evidence and heard oral argument regarding this motion on July 5, 6, 9, 10, 1990. The court ruled that the search warrant together with the supporting affidavits was sufficient and lawful. The court was concerned, however, that the affidavits were not physically attached to the warrant at the time it was executed. Consequently, the court asked the parties to research and submit briefs on the issue of the legal effect of failure to physically attach the affidavits to the warrant at the time it was executed. Having received the parties briefs on this issue and having reviewed the law and the facts relevant to this case the court is now prepared to rule.

### II. FACTUAL BACKGROUND

As part of a joint Securities and Exchange Commission (SEC) and Internal Revenue Service (IRS) investigation, Norman Korb of the SEC and Kenneth Crittenden of the IRS applied for a search warrant before Magistrate Ronald Boyce on January 11, 1985. The warrant was designed to obtain evidence relating to possible violations of securities and tax laws.

As part of the warrant application, Korb and Crittenden each submitted to the Magistrate affidavits detailing the reasons why a warrant should issue and what they sought to seize. In essence, the affidavits show that Mr. Thomas defrauded investors and the government by creating false tax deductions through the operation of fraudulent tax shelters. The affidavits supplied detailed information relating to how this organization was run. Specifically, the affidavits set forth the names of the various partnerships and corporations involved in the scheme and a description of the phony paperwork generated by Thomas and his employees. The affidavits also contained maps and diagrams of the defendant's corporate offices and indicated where relevant documents were kept.

On January 11, 1985 Magistrate Boyce authorized the warrant, finding that there was probable cause to believe Thomas was committing crimes and the evidence supporting such a conclusion was to be found at the location indicated. At the same time, the magistrate granted the government's motion to seal the Korb and Crittenden affidavits based on a finding that Mr. Thomas was a potential danger to the employees who had brought Mr. Thomas' activities to the government's attention and who subsequently cooperated in the government's investigation.

The warrant specifically incorporated by reference the supporting affidavits. Although the warrant incorporated the supporting affidavits and referred to them specifically in several places, the affidavits, having previously been sealed by the magistrate, were not attached to the warrant at the time the warrant was executed. The participating agents were required to read the affidavits before the warrant was executed. During the execution of the warrant, the agents were also given a list of

entities to which the warrant applied and gave the list to the defendant. One of the affiants was present when the warrant was executed to answer any questions the agents might have had regarding the items to be seized.

Defendant claims that because the affidavits were not physically connected to the search warrant at the time it was executed they cannot be considered part of the warrant nor can the particularity of affidavits be considered in determining the sufficiency of the warrant. Defendant further claims that without the supporting affidavits the search warrant lacked particularity and was thus unconstitutionally overbroad, in that the descriptions of the items to be seized was nowhere limited to a particular entity or individual.

## III. ANALYSIS

■ The first issue the court must resolve is whether the defendant has standing to raise a fourth amendment claim. The standing inquiry simply involves the "substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." *Rakas v. Illinois,* 439 U.S. 128, 133, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). To have standing to contest the search and seizure in question defendant must show that he had a legitimate expectation of privacy in the area searched. *United States v. Leary,* 846 F.2d 592, 595 (10th Cir.1988), *quoting United States v. Skowronski,* 827 F.2d 1414, 1418 (10th Cir.1987) (citing *United States v. Salvucci,* 448 U.S. 83, 93, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980). This requirement has two parts, first defendant must have "exhibited an actual (subjective) expectation of privacy and, second, that ... expectation [must] be one that society is prepared to recognize as 'reasonable.'" *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967).

■ In the present case, the evidence in question was seized from the defendant's corporate office. "There is no doubt that a corporate officer or employee may assert a reasonable or legitimate expectation of privacy in his corporate office." *Leary,* 846 F.2d at 595 (and cases cited therein). In the absence of evidence to the contrary, the court finds that the defendant had a reasonable expectation of privacy in the place where the evidence was seized and thus has standing to assert his fourth amendment rights.

■ The Fourth Amendment requires that warrants "particularly describ[e] ... the persons or things to be seized." U.S. Const. amend. IV. Practically speaking, the requirement that a warrant be particular means that the "warrant must allow the executing officers to distinguish between items that may and may not be seized." *Leary,* 846 F.2d at 602.

The search warrant itself commanded agents to seize:

1. articles of incorporation, certificates of limited partnerships and all related records, minutes of shareholders meetings, limited partnership meetings, directors and management meetings, and resolutions, directives, memoranda and other records thereto. These records are believed to be located in the file cabinet in Sandy Thomas' office and in file cabinets in a file room located at the north end of the reception area in Suite 320.

2. Contracts, agreements and leases which related to business operations and services and to the ownership of assets, including equipment and real property together with fixtures and appurtenances thereto. These are believed to be located in the file cabinet in Sandy Thomas' office and in file cabinets in file rooms nos. one and in another file room which is located at the south end of the reception area in Suite 320.

3. Financial journals and ledgers and records of the various entities, including but not limited to, general journals and ledgers, account ledgers, receipt and disbursement journals, financial statements and supporting records, adjusting journal entries, accounting wording papers, analysis sheets, asset lists, equipment lists, budgets, charts, cashier's check vouchers, computer codes, computer

runs, inventory records, insurance records, microfilm records, microfiche records, property appraisals, checking account statements together with deposit records, cancelled checks, debit and credit memoranda, duplicate deposit accounts, and all related documents. Some of these records may be on computer printouts or storage disks and are believed to be in the file cabinets in Rolayne Nielsen's office and the file cabinets in Gary Hourz's office.

4. Brokers accounts and documents showing investments and transactions in securities, including statements, confirmations, memoranda correspondence, and documents relating thereto. These are believed to be located in file rooms nos. one and two.

5. Stock and limited partnership records showing equity ownership including placement memoranda, stockholders lists, cancelled stock certificates, stock transfer instructions, investment letters, correspondence, and all other documents relating thereto. These are believed to be in the file cabinets in Sandy Thomas' office and file room no. two and in large binders located on top of a wall storage unit in Rolayne Nielsen's office.

6. Written correspondence, memoranda, appointment books, cassette tapes and other records and documents relating to the business affairs of the enumerated corporations and limited partnerships as listed on the attached affidavits, which record dates, places and purposes of meetings and the identity of persons with which business was negotiated or transacted. Various of these records believed to be in all of the individual offices, including Thomas' office.

7. Bugging devices and telephone tape recording paraphernalia, including all recordings from the same, which are believed to be in the conference room and in Thomas' office.

Which are fruits and instrumentalities of violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C. Section 77q(a), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78j(b), Rule 17 C.F.R. 240; and 26 U.S.C. Section 7206(2).

8. The above items listed in paragraphs 1, 2, 3, 4, 5, and 6, only those which related to the corporations and partnerships listed in the affidavits.

Defendant's Exhibit B. The above language, by itself, does not sufficiently limit the scope of the proposed search because the description of the items seized is nowhere limited to a particular entity or individual or to a specific transaction. By not limiting the search to a particular entity or transaction the above language encompassed virtually every document that one could expect to find at the place searched and did not "allow the executing officers to distinguish between items that may and may not be seized." *Leary*, 846 F.2d at 602. Although the above language references various sections of the criminal securities laws, such limitations do not adequately limit the executing officers' discretion. *See Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir.1987) (warrant limited to general conspiracy statute and general tax evasion statutes was overbroad); *United States v. Spilotro*, 800 F.2d 959, 965 (9th Cir.1986) (warrant limited solely by reference to criminal statutes found overbroad).

▮ To satisfy the fourth amendment particularity requirement, the supporting affidavits of Norman Korb and Kenneth Crittenden were specifically incorporated by reference into the warrant. The court has already ruled that the particularity of these affidavits was sufficient to limit the executing officers' discretion as to the items that should or should not be seized. The defendant claims, however, because these affidavits were not physically attached to the warrant, the affidavits may not properly be considered by the court in determining the sufficiency of the warrant.

Recently, in *Leary*, the Court of Appeals for the Tenth Circuit held that "the particularity of an affidavit may cure an overbroad warrant, but only 'where the affidavit and the search warrant ... can be reasonably said to constitute one document.' " *Leary*, 846 F.2d at 603, *quoting* 2 W. LaFave, *Search and Seizure* § 4.6(a), at 241.

The Tenth Circuit in *Leary* further held that " '[t]wo requirements must be satisfied to reach this result: first, the affidavit and search warrant must be physically connected so that they constitute one document; and second, the search warrant must expressly refer to the affidavit and incorporate it by reference using suitable words of reference.' " *Id.* *See also United States v. Medlin,* 798 F.2d 407, 410 n. 1 (10th Cir.1986) ("When an affidavit is attached to a warrant and incorporated by reference into the warrant, it can be used to cure a lack of particularity.").

■ While it is claimed that the search warrant was overbroad because the supporting affidavits were not physically attached, reaching such a conclusion does not mandate suppression of the evidence seized under the warrant. The government argues that even if the court were to find that the warrant lacked particularity, the "good faith" exception to the exclusionary rule, created in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applies in this case to admit the evidence. In *Leon* the Supreme Court modified the fourth amendment exclusionary rule by holding that the exclusionary rule should not bar the admission of evidence seized by officers acting in good faith and in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate but later found to be invalid. *Id.* at 913, 104 S.Ct. at 3415; *Leary,* 846 F.2d at 607, *citing United States v. Medlin,* 798 F.2d 407, 409 (10th Cir.1986). *Leon* applied the good faith exception to a search warrant which lacked probable cause. In *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), a case decided in conjunction with *Leon,* the Supreme Court extended the good faith exception to apply to a search warrant that lacked particularity. *Id.* 468 U.S. at 988, 104 S.Ct. at 3428. The government argues that the officers reasonably believed that the affidavits were incorporated into the warrant and thus sufficiently limited its scope. The issue before the court is whether the circumstances in this case show that the officers acted in good faith and in objectively reasonable reliance on, the warrant and their belief that the affidavits were incorporated therein even though the affidavits were not attached to the warrant.

The circumstances surrounding the both the application for and the execution of the warrant are relevant to the issue of the officer's good faith and reasonable reliance on the warrant. The agents applied for the warrant from a magistrate experienced in the field of criminal procedure. Magistrate Boyce is a well known law professor at the University of Utah, specializing in criminal law and procedure. He is also the author of many scholarly works on the subject of criminal procedure. When the agents presented the warrant to Magistrate Boyce he noted that it lacked particularity. Thus, before authorizing the warrant, Magistrate Boyce incorporated the supporting affidavits into the warrant to give the warrant sufficient particularity. To do this he used the words "incorporated by reference" on the face of the warrant. This evidences the magistrate's intent to incorporate the affidavits into the warrant and to limit the scope of the search through the affidavits.

A few hours prior to the execution of the warrant the participating agents read the affidavits and subsequently relied on that information to limit the search. During the search the agents were provided with a list of entities which were the subject of the search. The agents gave a copy of the list to the defendant at the time of the search. This entity list was part of the Korb affidavit and included the following corporations: Pen–Tec International Inc., Magma Energy & Petrol Corp., Empire Credit Corp., Titan Corp., Terra Corp., RDS Inc., International Equities Inc., 1st National Credit Corp., National Fund, Inc., Petro Corp., Transworld Petroleum Oil services, Inc., 1st United Corp., P & S Management, Inc., My Ranch Inc., Jonco Associates, Inc., 1st Western Corp., 1st Equities Corp. The list also included the following limited partnerships: Drillco Ltd., Drillco No. 2, Drillco No. 3, Drillco No. 4, Drillco No. 5, Energy leasing Ltd., Energy Leasing No. 2, Energy Leasing No. 3, Leasco No. 6, Wyoming Leasing, XL Leasing Ltd., 1st Lease, MMM

Leasing, Big Sky Leasing, and P.E.J. Leasing.

Defendant argues that because the affidavits were not physically attached to the warrant, the participating agents could not have reasonably relied on their belief that the affidavits were incorporated. The circumstances surrounding the failure to attach the affidavits, however, support the agents' claim of good faith. The affidavits were not physically attached to the warrant because they had previously been sealed by the magistrate. Magistrate Boyce sealed the affidavits after finding that the defendant was a potential danger to the employees who had cooperated in the government's investigation. Thus, a physical attachment of the affidavits would create a risk of harm. Moreover, the agents' reliance on the magistrate's decision to seal the affidavits, thus precluding attachment to the warrant, appears reasonable in light of the magistrate's finding that the defendant was a potential danger to his employees who cooperated with the government investigation.

Additionally, the Tenth Circuit's rule of physical attachment had not yet been decided when Magistrate Boyce issued the warrant in this case. As previously noted, the physical attachment rule was first mentioned by the Tenth Circuit in 1986 in *United States v. Medlin*, 798 F.2d 407, 410 n. 1 (10th Cir.1986). The rule was subsequently discussed in depth in *United States v. Leary*, 846 F.2d 592 (1988). It would be improper to find that the agents in this case acted in bad faith or unreasonably by not attaching the affidavits to the warrant when the physical attachment rule had not yet been established in the Tenth Circuit. *Id.* at 609 (noting that agents are not expected to "anticipate legal determination or resolve ambiguities in the law").

The defendant also argues that the "officers who executed the [search warrant] wholly disregarded the narrowed scope of the [search warrant] as issued by the magistrate." Defendant Thomas' reply to Government's Supplemental Brief on Defendant's motion to Suppress, Aug. 8, 1990, at 16. The defendant claims that "the officers seized substanially [sic] all of the documents of an entity if that entity was simply somehow 'related' to organizations on the 'Entity List.'" *Id.* at 17. The defendant further claims that was not proper and shows that the officers lacked good faith in executing the warrant. *Id.*

 The fact that the officers seized documents relating to entities other than those included on the entity list does not mandate the conclusion that such a seizure was improper. Nor does it show that the officers lacked good faith in executing the warrant. Agent Kenneth Crittenden, who was present at the time the warrant was executed, testified that, many items seized—while not expressly listing a named entity—were related to a named entity through prior transactions. "When a logical nexus exists between seized but unnamed items and those items listed in the warrant, the unnamed items are admissible." *United States v. Gentry*, 642 F.2d 385, 387 (10th Cir.1981) (and cases cited therein). If there is evidence offered that was seized outside the scope of the warrant with no logical nexus to the listed entities, its admissibility may be considered at trial. However, the exclusionary rule does not act to suppress evidence seized within the scope of a warrant simply because evidence outside the scope of the warrant was also unlawfully seized. *United States v. Tamura*, 694 F.2d 591, 597 (9th Cir.1982), citing *United States v. Daniels*, 549 F.2d 665, 668 (9th Cir.1977).

## IV. CONCLUSION

Based on the above analysis, the court finds that the circumstances surrounding the application for and the execution of the warrant evidence the officer's good faith and reasonable reliance on the warrant and on their belief that the affidavits were incorporated therein. Therefore, defendant's motion to suppress is denied.

IT IS SO ORDERED.