**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frederick E. LAMPORT, Jr.,
Defendant-Appellant.**

**No. 85–1529.**

United States Court of Appeals,
Tenth Circuit.

March 17, 1986.

Steve Soltis, Asst. Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

John E. Green, First Asst. U.S. Atty. (William S. Price, U.S. Atty., with him on brief), Oklahoma City, Okl., for plaintiff-appellee.

Before SEYMOUR, SETH and BALDOCK, Circuit Judges.

SETH, Circuit Judge.

The fraud charged against Dr. Lamport was the filing of claims against insurance companies for treatment of their insureds when in fact no such treatment had been provided.

The appeal concerns only the denial of defendant's Motion to Suppress material secured by the Government pursuant to a search warrant. The information which was used by the postal inspectors to seek a search warrant, and upon which the supporting affidavit was based, was for the most part provided by Mrs. Paula Elliott and Mrs. Beverly Browning. Mrs. Elliott was the secretary of the defendant at his office in Seminole and Mrs. Browning, the secretary at his clinic in Tecumseh, Oklahoma. They each had access to this information in the offices where they worked. The issue which is raised as to the information provided by these two persons is whether they obtained it at the offices in their private capacities as "private actions" or whether they were acting, at least as to some of it, as agents or under the direction of the law enforcement officers.

The testimony at the hearing to suppress separates the material provided to the officers at the first meetings between Mrs. Elliott and Mrs. Browning and the officers from that which may have been provided at later meetings. The record supports the finding of the trial court that as to Mrs. Elliott all the material used for the affidavit which had been received from her was provided on the first contact with the local sheriff. The sheriff prepared a report which went to the federal authorities which included this material. These authorities took no action and apparently their investigation was terminated. She or the sheriff had sent some notes and some tapes which Mrs. Elliott had made after her initial contact with the sheriff, but these were returned when the investigation stopped and nothing indicates this material was used.

Somewhat later the sheriff sent his report with the initial material from Mrs. Elliott to another federal officer and this was followed by an investigation by postal authorities. The affidavit prepared by this postal inspector, Mr. Odom, thus utilized the material given by Mrs. Elliott on her first visit to the sheriff. He also used material he secured from insurance investigators.

From the outset of the suspicions of Mrs. Elliott, she had phoned Mrs. Browning at the Tecumseh clinic expressing her concern and suggesting that Mrs. Browning should take some notes and check the files, and she did so. This was before Mrs. Elliott's contact with the sheriff. Mrs. Browning had collected a variety of files, a sign-in

register, memos and claims before her first contact with the postal inspector. She delivered all this to him at a first meeting in Tecumseh on May 1. At this meeting the agent asked her how many active insurance patients the defendant had. She told him she could get a list of such patients which she did and gave to the agent later the same day. The trial court suppressed this list of active insurance patients as furnished by Mrs. Browning after the first meeting with the agent. This was the only material suppressed.

We conclude that the material used as a basis for the warrant was the result of "private actions" of Mrs. Elliott and Mrs. Browning as did the trial court. The only exception being the list of names furnished by Mrs. Browning after the discussion with agent Odom. The contacts by Mrs. Elliott with Mrs. Browning did not change Mrs. Browning's status.

This conforms with the standard described by the Ninth Circuit in *United States v. Snowadzki*, 723 F.2d 1427 (9th Cir.), as a unilateral act by an individual with no encouragement or acquiescence by the officers. *See also United States v. Sherwin*, 539 F.2d 1 (9th Cir.) (en banc). There were some categories described in the warrant such as "financial records." The defendant challenges the search warrant on the ground that it was in terms that were too general. The description is as follows:

"[P]atient sign-in registers for Seminole and Tecumseh clinics (1983–1984); patient records of 74 patients (names attached) including but not limited to records of treatments, x-rays, insurance billings and payments; one record book of payments from insurance companies; check book stubs, 1983–84; financial records; and any other property that constitutes evidence of the commission of the criminal offense, Title 18, United States Code, Section 1341 (Mail Fraud)."

We must conclude that the warrant contains a sufficiently specific description of the things to be seized under *Anderson v. Maryland*, 427 U.S. 463, 96 S.Ct 2737, 49

L.Ed.2d 627, and *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231. The defendant urges particularly that in view of the variety of circumstances under which mail fraud may be charged the last phrase is too general. The phrase, in our view, refers to the specific items listed and thus is not something different. The official who made the investigation was a postal inspector who was familiar with the scheme and who provided the affidavit, was the person to whom the warrant was directed, and the one who conducted the search (with others and in the presence of the defendant) and who executed the return. The return listed only items specifically described. Thus this case is unlike *Voss v. Bergsgaard*, 774 F.2d 402 (10th Cir.), where the warrant was open ended and the Government failed to pinpoint the statutes violated or to establish that the alleged crime permeated the business. The circumstances are very much like those in *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737, as the trial court observed. We do not consider the warrant to be invalid but if it were the evidence would not be suppressed under *Massachusetts v. Sheppard*, or under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677.

The defendant also argues that no probable cause was demonstrated but this argument must fail. Sufficient underlying facts were available to the magistrate. We considered this issue in *Edmondson v. United States*, 402 F.2d 809 (10th Cir.), and *United States v. Berry*, 423 F.2d 142 (10th Cir.), and there said that affidavits for search warrants must be tested in a common sense and realistic manner. Also we there held that the reviewing courts "should show deference to determinations of probable cause by issuing magistrates." 423 F.2d at 144. When these standards are supplied it must be concluded that probable cause was shown.

The Supreme Court in *United States v. Leon*, 468 U.S. 897, ——, 104 S.Ct. 3405, 3422, 82 L.Ed 677, stated that its holding therein left "untouched the probable-cause

standard." This must be taken as an indication of the reliance which must be placed on the magistrate's determinations absent any obvious failure. The magistrate who here issued the warrant was provided with sufficient factual material to establish probable cause as he determined. There is no failure as described in the examples in *Leon*. There is no indication that there was any reliance on conclusory statements as the defendant argues, and there was no need to. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.

The search warrant was properly executed.

The judgment of the trial court entered on the Motion to Suppress is AFFIRMED.