930 F.2d 36
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patricia R. WILLIAMS, Defendant-Appellant.
 No. 90-1152.
 United States Court of Appeals, Tenth Circuit.
 April 3, 1991.
 
 Before JOHN P. MOORE, SETH and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Defendant Patricia Williams appeals her jury conviction, in the United States District Court for the District of Colorado, for possession with intent to distribute, and aiding and abetting possession with intent to distribute 50 grams of cocaine. Ms. Williams complains the trial court erred in finding: (1) the search warrant was supported by probable cause; (2) the officers acted in good faith even if the warrant was not supported by probable cause; and (3) the informant was not a government agent when she entered Ms. Williams' apartment. We affirm.
 
 I. Background
 
 2
 In April 1990, defendant Patricia Williams was convicted of possession with intent to distribute, and aiding and abetting possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. She appeals the trial court's denial of her motion to suppress evidence seized pursuant to a search warrant.
 
 
 3
 In the early morning hours on November 29, 1989, Denver police executed a search warrant at Ms. Williams' apartment, finding large amounts of crack cocaine, cocaine powder, cash, and drug paraphernalia. The warrant was based on Detective Stephen Conner's affidavit, the supporting facts of which were provided by Sabrina Lloyd.
 
 
 4
 Ms. Lloyd had been arrested on November 18, 1989, during a larceny investigation in Aurora. About three grams of crack cocaine and $2,700 in cash were found in her possession. Detective Conner advised Ms. Lloyd of her rights and the charges she faced. He then told her if she would supply information about her sources of crack cocaine, he would not require her to post a $10,000 bond. If her information led to the recovery of crack cocaine, Detective Conner stated he would notify the district attorney of her assistance. Ms. Lloyd provided Detective Conner with a little information and was released on her own recognizance, having been given Detective Conner's business card and pager number.
 
 
 5
 According to Detective Conner, Ms. Lloyd contacted him on November 28, 1989, and told him she knew about a residence which contained about one pound of cocaine. Detective Conner and another officer, at Ms. Lloyd's direction, drove with her to an apartment complex located at 3300 South Tamarac. Pointing to a second-floor apartment, Ms. Lloyd explained that while moving some belongings out of the apartment that day, she had noticed a large freezer-sized plastic bag containing smaller plastic bags of crack cocaine. She also identified the occupant of the apartment as a person named Pat.
 
 
 6
 Later that day, Detective Conner applied for a search warrant. His affidavit began with the address of the apartment, a description of the complex, and a general description of cocaine substances and paraphernalia. Detective Conner then related his experience handling over two hundred drug-related cases, including six months with the Metropolitan Crack Task Force and special training for search and arrest procedures in drug cases. Next, he recited Ms. Lloyd's name, the pending charges against her, and the information she had provided. Specifically, Detective Conner stated Ms. Lloyd had observed about one-half kilogram of cocaine in the apartment that day, and that "[she] advised that she was familiar with the address as she used to be in the business of selling narcotics with another black female named 'Pat' at that location." Detective Conner also noted that Ms. Lloyd was familiar with the appearance and packaging of crack cocaine because of her prior possession, and that she could not carry out a crack purchase from Pat because Pat knew she had been arrested and owed Ms. Lloyd $5,000 from previous drug transactions.
 
 II. Admissibility of Seized Evidence
 
 7
 We do not address defendant's contention that the warrant was not supported by probable cause because we hold that even if the warrant were invalid, the search was protected by the good faith of the officers. United States v. Leon, 468 U.S. 897 (1984). The applicability of Leon is a question of law which we review de novo. United States v. Corral-Corral, 899 F.2d 927, 929 (10th Cir.1990).
 
 
 8
 In Leon, the Supreme Court established that "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate," the evidence obtained need not be suppressed even if the warrant is later found to be invalid. 468 U.S. at 920. The Court reasoned that police misconduct, the target of the exclusionary rule, would not be deterred by excluding evidence which the police reasonably believed they had obtained legitimately. However, the Leon court specified certain situations in which suppression would still be appropriate. 468 U.S. at 923. Ms. Williams contends two of those situations exist in her case.
 
 
 9
 A. Deliberately or Recklessly False Affidavit
 
 
 10
 The Supreme Court relied on its previous decision in Franks v. Delaware, 438 U.S. 154 (1978) to conclude that if the affiant knowingly or recklessly misleads the magistrate or judge who issues the warrant, the results of the search should be suppressed. Detective Conner committed that wrong, Ms. Williams contends, by declaring in the affidavit that "Lloyd advised that she was familiar with the address as she used to be in the business of selling narcotics with another black female named 'Pat' at that location."[1] Ms. Williams argues that Detective Conner's answers to the prosecution's questions at the suppression hearing were at variance with this statement:
 
 
 11
 Q: Did [Ms. Lloyd] make any admissions to you regarding her use or distribution of crack cocaine?
 
 
 12
 A: She didn't. I approached her on it. With that amount that she's talking about--and the amount referred back to November 18--I basically advised her that it was my belief that she was probably selling the cocaine as well from that apartment complex.
 
 
 13
 Q: What did she indicate in response to this?
 
 
 14
 A: I don't think she even responded yes or no.
 
 
 15
 Although the government correctly notes that Ms. Williams did not raise this issue at trial, we address it nevertheless. We conclude the defendant has failed to establish knowing or reckless falsity by a preponderance of the evidence. See Corral-Corral, 899 F.2d at 933. The affidavit statement and Detective Conner's testimony are not necessarily inconsistent. The affidavit refers to Ms. Lloyd's past involvement in drug sales, which she could have conveyed to Detective Conner at some time other than the specific incident discussed at the suppression hearing. Detective Conner's testimony at the suppression hearing arguably related only to Ms. Lloyd's present involvement in drug dealing. While another interpretation is arguable, it is evident the ambiguity of these interpretations preclude a conclusion of knowing or reckless falsehood on the part of Detective Conner.
 
 B. Lack of Indicia of Probable Cause
 
 16
 The Leon Court also sanctioned suppression of evidence if an affidavit is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " 468 U.S. at 923 (citation omitted). Ms. Williams argues Detective Conner's affidavit fits this description, emphasizing that the police did not independently corroborate Ms. Lloyd's information beyond going to look at the apartment. Although investigation of tips strengthens an affidavit, see Leon, 468 U.S. at 926, we cannot say its absence in this case made reliance on the information "entirely unreasonable." The affidavit contained several indicia of probable cause.
 
 
 17
 III. Relationship Between Government and Informant
 
 
 18
 Ms. Williams asserts Ms. Lloyd became a government agent when she agreed to provide information in exchange for mitigation of her own punishment. Thus, her warrantless "search" of the apartment was illegal. The question of agency is a matter of law in the context of motions to suppress criminal evidence, subject to de novo review. Pleasant v. Lovell, 876 F.2d 787, 799 (10th Cir.1989); United States v. Lamport, 787 F.2d 474 (10th Cir.), cert. denied 479 U.S. 846 (1986).
 
 
 19
 In Pleasant, we reiterated the test for determining when a private person has become an instrument or agent of the government, turning a search into government action subject to the strictures of the Fourth Amendment. Two critical factors in determining agency are: " '1) whether the government knew of and acquiesced in the intrusive conduct, and 2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends.' " 876 F.2d at 797, quoting United States v. Miller, 688 F.2d 652, 657 (9th Cir.1982).
 
 
 20
 We hold that the government's relationship with Ms. Lloyd did not constitute knowledge of and acquiescence in her actions under the first prong of Pleasant. As the trial court reasoned, the government did not tell Ms. Lloyd to look for cocaine in Ms. Williams' apartment; indeed, they did not even know of her presence there. Detective Conner simply made a general suggestion to Ms. Lloyd that she might benefit from sharing any information she had about cocaine dealers. Compare Lamport, 787 F.2d at 476 (trial court properly suppressed a list of patients which secretaries obtained in response to a specific request by investigators); see Miller, 688 F.2d at 657 (police knowledge of a private person's plan to pose as a buyer to seek out a stolen trailer did not create agency relationship in part because officers did not encourage or plant the idea of conducting a private search). Therefore, we reject defendant's argument that Ms. Lloyd was a government agent and that the seized evidence should be suppressed.
 
 
 21
 AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 In her reply brief, Ms. Williams also claims there was no proof Ms. Lloyd told Detective Conner she could not purchase crack from Pat because Pat knew she had been arrested and owed Ms. Lloyd $5,000. At the suppression hearing, Detective Conner testified that Ms. Lloyd said she had a "falling out" with Pat. However, the affidavit and testimony do not contradict each other. The fact that Detective Conner did not testify about each and every one of Ms. Lloyd's remarks does not prove statements in the affidavit were false