F I L E D
United States Court of Appeals
Tenth Circuit

MAY 29 2003

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ANTJUAN PATTERSON,

      Defendant - Appellant.

No. 02-3353
(D.C. No. 02-CR-40042-JAR)
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

Defendant Antjuan Patterson pled guilty to possession of a firearm following

conviction of misdemeanor domestic battery, a violation of 18 U.S.C. § 922(g)(9). As

part of his plea, Defendant reserved the right to appeal the district court's denial of his

motion to suppress a .45 caliber pistol seized from his residence. At sentencing,

Defendant objected to a reference in the Presentence Report to his alleged gang

membership. The district court overruled the objection. Defendant appeals the district

court's denial of his motion to suppress and the court's refusal to strike the gang reference

_____

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

from the Presentence Report. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

I.

On October 23, 2001, a shooting occurred at "Shooters," a bar in Topeka, Kansas. Police officers responding to the scene found a number of spent shell casings, indicating that a semiautomatic or automatic weapon had been used in the shooting. The officers interviewed witnesses at the scene. One witness provided a description of the gunman and second person accompanying the gunman. The witness also stated that the gunman had used a weapon with two handles. The victim of the shooting, John Wenger, told officers the weapon was a dark-colored or black semiautomatic handgun.

Wenger also named Defendant as the person accompanying the gunman at the time of the shooting. From a photo lineup of possible suspects, Wenger again identified Defendant as the person accompanying the gunman. After the identification, officers traveled to Defendant's residence and knocked on the door. A man matching the witnesses' description of the gunman answered the door. Police later identified the man as Louis Pillay. In Pillay's presence, officers questioned Defendant about the shooting. Defendant eventually named Pillay as the gunman. During the interview, Defendant also advised officers he possessed a silver .45 caliber handgun at his residence. The officers arrested Pillay and transported him to the police station for questioning. Defendant agreed to accompany officers to the station.

At the station, Defendant provided a written statement implicating Pillay in the shooting. Defendant did not provide information on the location of the weapon. After questioning, Pillay confessed to the shooting. When officers questioned him about the location of the weapon used in the shooting, Pillay initially indicated he did not know the weapon's location. Subsequently, Pillay asserted he had thrown the weapon from the vehicle after the shooting. Finally, Pillay told officers the weapon was buried under a doghouse at Defendant's residence.

Officers prepared an affidavit and obtained a search warrant for Defendant's residence. The search warrant authorized officers to search for a "semiautomatic handgun, ammunition, magazines and any other item associated with the attempted murder of John Webber (sic)." The affidavit accompanying the warrant described the items to be seized as a black semiautomatic handgun, ammunition, magazines and any other items associated with the attempted murder of John Wenger, and items that would identify persons residing at the premises, including rent receipts and correspondence. In executing the search warrant, officers found a nine-millimeter, black, semiautomatic handgun under the doghouse. After further search, officers also found and seized a .45 caliber silver handgun inside the residence.

Defendant filed a motion to suppress the .45 caliber pistol seized from his residence asserting the warrant was overly broad and that officers exceeded the scope of the warrant. The district court held an evidentiary hearing on Defendant's motion at

which several officers involved in the investigation testified.  Following the hearing, the district court denied Defendant's motion.

II.

In reviewing the district court's denial of a motion to suppress, this Court accepts the district court's factual findings unless they are clearly erroneous, and views the evidence in the light most favorable to the Government.  United States v. White, 326 F.3d 1135, 1137 (10th Cir. 2003).  We review de novo the district court's legal conclusions. Id.

A.

Defendant first asserts the district court erred in denying his motion to suppress because the warrant authorizing the search of his residence was overly broad.  The Fourth Amendment requires warrants "particularly describing the place to be search, and the persons or things to be seized."  U.S. Const. amend. IV.  A sufficiently particular warrant "allows the searcher to reasonably ascertain and identify the things authorized to be seized, leaving nothing to the officer's discretion as to what is to be seized, so that the officer is prevented from generally rummaging through a person's belongings."  United States v. Guidry, 199 F.3d 1150, 1154 (10th Cir. 1999).  A warrant describing items to be seized in broad and generic terms may be valid "when the description is as specific as the circumstances and the nature of the activity under investigation permit."  Id. (quoting United States v. Leary, 846 F.2d 592, 600 (10th Cir. 1988)).

Defendant argues the warrant was overly broad because it did not describe the weapon to be seized with the detail provided by the eye witnesses, and did not limit the search to the location Pillay provided during questioning. During the evidentiary hearing, officers testified that, in their experience, witness descriptions of a crime weapon are often affected by the stress of experiencing a violent crime, low lighting, and the chaotic nature of a shooting, all factors present in this case. The officers also noted that the witnesses' descriptions of the crime weapon were not entirely consistent. Thus, the officers testified they did not describe the weapon to be seized with more detail because they were not entirely comfortable with the accuracy of the witnesses' description. Officers also testified they did not include information on the likely location of the weapon because they were not confident Pillay's answer was truthful. Officers noted that Pillay provided three different answers when asked the location of the weapon used in the shooting. They also noted Defendant did not provide any information on the location of the weapon, and testified that they were not yet confident his role in the shooting was as limited as he claimed.

The district court found the officers' testimony credible. Specifically, the court ruled the description contained in the search warrant was based upon the best information available and the officers' experienced evaluation of which details were reliable. Given the officers' testimony, the district court did not err in concluding the warrant was not

overly broad.[1]

B.

Defendant also asserts officers exceeded the scope of the warrant by seizing a firearm that was not described in the warrant. Specifically, Defendant asserts officers should not have seized the silver .45 caliber handgun when they had already seized a handgun that matched the warrant's description of the crime weapon and was found in the location described by the gunman.

In addition to a semiautomatic handgun, the warrant authorized officers to search for ammunition, magazines, and other items associated with the crime. Thus, the officers' continued search after finding the handgun under Defendant's doghouse clearly was within the scope of the warrant. Given that the crime under investigation was a shooting, officers also were within the scope of the warrant in seizing a second handgun. Witness descriptions of the crime weapon were inconsistent, suggesting the possible presence of more than one weapon. In addition, officers performing the search could not be entirely sure the handgun found under the doghouse was the crime weapon. Pillay had not been particularly forthcoming in response to police questioning, providing inconsistent responses to questions about the crime weapon. Given these facts, the

---

[1] Defendant also argues the warrant failed to limit the search to a nine-millimeter handgun. Following the evidentiary hearing, the district court specifically found the police were not aware the weapon used in the shooting was a nine-millimeter handgun when they sought the warrant. The district court's finding was not clearly erroneous.

-6-

district court did not err in concluding the police did not exceed the scope of the warrant by seizing a second handgun.

III.

Finally, Defendant appeals the district court's decision to overrule his objection to a reference in the Presentence Report ("PSR") to his gang membership. We review de novo the sentencing court's legal determinations, and accept the court's factual findings unless clearly erroneous. See United States v. Valdez, 158 F.3d 1140, 1141 (10th Cir. 1998).

Defendant filed a sentencing memorandum seeking a downward departure and objecting to paragraph fifty-two of the PSR, which stated:

> According to a 1996 Topeka Police Department report, the defendant was identified by the Street Crime Action Team (SCAT) as a gang member.

Probation provided Defendant a copy of the police report referred to in paragraph fifty-two. The report referenced an aggravated assault that the reporting officer characterized as "gang activity." The report also stated Defendant was a "known gang member in SCAT files." Defendant asserts that the report was in error. Defendant also argues the district court's failure to correct the PSR was a violation of Fed. R. Civ. P. 32(c)(1), which requires the district court to make factual findings on objections to the sentence report where the controverted issue will affect sentencing.

At sentencing, the district court first noted that the language contained in the PSR was accurate. A 1996 police report did identify Defendant as a gang member. The court

then ruled that, although the police report could conceivably be wrong about Defendant's gang membership, the PSR paragraph did not need to be stricken as it would have no effect on sentencing. The court then granted Defendant's unopposed motion for a downward departure, making Defendant eligible for probation. Given the district court's determination that Defendant's alleged gang membership would not affect his sentence, the court did not err in refusing to strike the reference. See Fed. R. Civ. P. 32(c)(1) (requiring the court to resolve factual disputes only where the controverted issue affects a defendant's sentence).

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge